ABRAHAM OBERNDORFF, Trustee of HERMAN STETT-
HEIMER and MAX AFFELDER, trading as STETTHEIMER
& AFFELDER *vs.* THE UNION BANK OF BALTIMORE.

*Principal and Surety—Release of Principal without
Valid Consideration, no Discharge of the Surety—
Part payment of a Debt not a Valid Consideration
for a Release of the whole.*

If the creditor release or compound with the principal debtor, without
the consent of the surety, although the principal debtor may be in in-
solvent circumstances, and the arrangement with him be in truth to
the surety's advantage, it will nevertheless discharge the latter from
all responsibility.

But before a surety or endorser can be exonerated from his responsibility
upon the ground that there has been an unauthorized indulgence given,
or composition made with the principal debtor, it must be shown that
such indulgence or composition has been effected by some express agree-
ment founded upon a valid consideration, and which is legally binding
on the creditor.

Part payment of the amount due, whether by principal or surety, will
not discharge the surety, even where it is agreed that such part pay-
ment shall have that effect.

Where a party is bound to pay a certain sum, there is no consideration,
in contemplation of law, for a promise that a less sum shall be received
in satisfaction.

A and B, by a written agreement, assigned to a bank a number of col-
laterals as security for their liability to it, whether then existing or
thereafter to arise, as drawers, endorsers, or otherwise, with power to
the bank in case of default on the part of A and B to pay promptly
their liabilities, to collect the said collaterals by suit or otherwise, to
make compromise in the settlement of the same, and to apply the pro-
ceeds to the payment of said liabilities. A and B subsequently failed,
being largely indebted to the bank upon notes endorsed by them, and
discounted by it for them, and assigned all their property to C in trust
for their creditors. Subsequent to the failure the bank compromised
with the makers of certain of the discounted notes, at fifty cents on
the dollar, and also made large collections upon other collaterals held
by it under said agreement, and claimed the right to apply the moneys

so collected to the payment of the entire indebtedness of A and B to it, which claim was resisted by the assignee of C upon the ground that by the compromises aforesaid, the makers of the notes compromised were released, and the liability of A and B as endorsers upon said notes was discharged. The agreement between the bank and the makers of the notes compromised was by parol, after the notes fell due, and the notes were not surrendered. On a suit brought by the assignee of A and B against the bank, HELD:

1st. That there was no legal consideration for the relinquishment on the part of the bank of the balance due on the notes compromised, after the receipt of one-half of their face value.

2d. That in the absence of some sufficient consideration, the agreement between the bank and the makers of the notes was wholly inoperative, and could not be set up or relied on by the makers of the notes, either as against the bank or the endorsers.

3d. That the bank was not bound to any active diligence in their collection, to give it the benefit of the collaterals deposited with it by the endorsers.

APPEAL from the Superior Court of Baltimore City.

This was an action of *assumpsit* brought by the appellant against the appellee, upon the common counts. At the trial the plaintiff filed an amended narr, containing three counts, the first in assumpsit, the second and third in trover. Pleas—the general issue.

The facts in the case are these: On the 16th May, 1860, Stettheimer & Affelder, a firm in Baltimore city, assigned to the appellee a number of collaterals as security for their liability to it, whether then existing or thereafter to arise, as drawers, endorsers, or otherwise, with power to the appellee, in case of default on the part of Stettheimer & Affelder to pay promptly their liabilities, to collect the said collaterals by suit or otherwise, to make compromise in the settlement of the same, and to apply the proceeds to the payment of said liabilities. They failed in March, 1862, being largely indebted to the appellee upon notes endorsed by them, and discounted by it for them. And on the 28th of October, 1862, they made a deed of trust

Oberndorff, Trustee *vs.* Union Bank of Baltimore.

of all their property of every description, real and personal, joint and separate, to the appellant, for the benefit of their creditors as therein specified. At the time of their failure, the appellee had in its possession, under the agreement of the 16th of May, 1860, already referred to, a considerable number of collaterals, out of which it, from time to time, collected the sum of $5,861.49, leaving a balance due of $3,638.38 upon the aggregate of the notes discounted as above stated. Amongst these collaterals was a note of Weiller Bros. & Co., for $704.95, due January 11th, 1862, which, on the 18th of April, 1865, the appellee compromised with them for fifty cents on the dollar.

Amongst the notes discounted, were six drawn by Steiner Bros. & Co., amounting in all to $3,186.42. Of these, two for $410 each were renewals of one accommodation note for $1,037, which had been loaned by Steiner to the appellant's assignors, and at maturity had been reduced and renewed. These six notes the appellee, on the 22d March, 1865, compromised and settled absolutely with the makers for fifty cents on the dollar, of principal and interest, and in consideration thereof agreed to release them, holding the notes for their benefit.

In addition to these notes of Steiner Bros. & Co., the appellee had discounted for Stettheimer & Affelder a note drawn by A. Heilbrun, due June 18th, 1861, for $407.51. This note it also compromised for fifty cents on the dollar, September 4th, 1863. The appellee· had discounted for Frick, Phillips & Co. a note of Stettheimer & Affelder, for $348.38, due May 27th, 1861. This note it paid out of the proceeds of the collaterals deposited with it by them, and collected by it. With the proceeds of the collaterals, and with the amounts received from the makers of the notes discounted by it, either by compromise, as stated above, or in full, the claim of the appellee against Stettheimer & Affelder was wholly paid, and it then sur-

Oberndorff, Trustee, vs. Union Bank of Baltimore.

rendered to the plaintiff, on June 19th, 1866, before this suit, all the uncollected collaterals, and unpaid notes discounted.

Stettheimer & Affelder never offered to pay what they owed it, and take up their notes and collaterals. Nor would they or their assignee, the appellant, although applied to for their consent, ever acquiesce in or object to the settlement made with Steiner.

The testimony clearly showed that the compromises made with Steiner Brothers & Co., Weiller Brothers & Co., and A. Heilbrun, were made judiciously and in good faith.

The plaintiff offered six prayers, of which the first and second, relating to the Steiner notes, were granted, with a modification annexed by the Court. The third and fourth were rejected, and the fifth and sixth granted.

The defendant offered five prayers, of which the Court granted the first, second, third and fourth, and rejected the fifth.

The first and second prayers of the plaintiff raised the question of the right of the bank to hold Stettheimer & Affelder bound for the remainder of the Steiner Brothers & Co.'s notes, after compromising with and releasing Steiner, &c., as above set forth. The second prayer related to two of those notes, as distinguished from the others, because those two were notes exchanged between Stettheimer & Affelder and Steiner Brothers & Co., while the other four were regular business notes given for goods sold by the former to the latter.

The Court below refused to grant these two prayers, and gave the jury instructions in the same terms, but with a modification to the effect that if the jury found the compromise made by the bank to have been judicious, and that the plaintiff sustained no loss thereby, the endorsers were not discharged, and the bank had the right to act as it did.

The appellant excepted to the rejection of his first and second prayers, and to the modified instructions given by the Court.

The plaintiff's third prayer raised the same questions as to the Heilbrun note.

The fourth prayer presented the question, whether, under the circumstances, the bank had the right to treat the note of Stettheimer & Affelder, which it discounted for Frick, Phillips & Co., as a liability of Stettheimer & Affelder, under the contract relating to the collaterals, as against the plaintiff.

The cause was argued before BARTOL, C. J., STEWART, MILLER and ALVEY, J.

*Henry Stockbridge* and *Charles Marshall,* for the appellant, cited *Wood vs. Repold,* 3 *H. & J.,* 125; *Yates vs. Donaldson,* 5 *Md.,* 400; *Withall vs. Masterman,* 2 *Campbell R.,* 179.

*I. Nevett Steele,* for the appellee, cited *Hardy vs. Coe,* 5 *Gill,* 196-7; *Menkins vs. Menkins,* 23 *Missouri,* 253; *Ingalls vs. Lord,* 1 *Cowen,* 240; *Potter vs. Merchants' Bank,* 28 *New York,* 655.

ALVEY, J., delivered the opinion of the Court.

There is no doubt of the general proposition, that if the creditor release or compound with the principal debtor, without the consent of the surety, although the principal debtor may be in insolvent circumstances, and the arrangement with him be, in truth, to the surety's advantage, it will, nevertheless, discharge the latter from all responsibility. The question whether the surety has been, in point of fact, actually damnified by such dealing with the principal debtor, is not open to inquiry. It is his right to determine for himself what is, or is not, for his benefit. He must be left free to consider whether he will

have recourse to his remedy against his principal or not; and if, by any act of the creditor, this right be taken from him, the law allows him to elect to consider himself discharged from the contract altogether. "For it is," says Lord LOUGHBOROUGH, in the leading case of *Rees vs. Berrington*, 2 *Ves., Jr.*, 540, "the clearest and most evident equity not to carry out any transaction without the privity of him who must necessarily have a concern in every transaction with the principal debtor. You cannot keep him bound, and transact his affairs (for they are as much his as your own), without consulting him. You must let him judge whether he will give that indulgence contrary to the nature of his engagement."

But while such is the rule, before a surety or endorser can be exonerated from his responsibility, upon the ground that there has been an unauthorized indulgence given, or composition made with the principal debtor, it must be shown that such indulgence or composition has been effected by some express agreement, founded upon a valid consideration, and which is legally binding on the creditor. Without sufficient consideration the agreement would be a nullity, and consequently would bind no one. And the first question in this case is, whether the compromises and settlements made by the bank with *Steiner Brothers & Co.*, and with *Heilbrun*, whereby fifty cents in the dollar were received on the notes discounted for *Stettheimer & Affelder*, had in them the elements of binding contracts, and such as could be enforced by the parties, either as a defence or as a cause of action; for, if not, *Stettheimer & Affelder* remained bound as endorsers, notwithstanding the arrangement made by the bank with the makers of the notes.

There is no principle better established than that part payment of the amount due, whether by principal or surety, will not discharge the surety, even where it is agreed that such part payment shall have that effect; for

Oberndorff, Trustee, *vs.* Union Bank of Baltimore.

the surety being equally bound with the principal for the payment of the whole, neither can be discharged upon payment of less than the whole, except it be by some agreement founded upon a valid and sufficient consideration. Where a party is bound to pay a certain sum, there is no consideration, in contemplation of law, for a promise that a less sum shall be received in satisfaction. *Geiser vs. Kershner,* 4 *Gill & John,* 305 ; *Fitch vs. Sutton,* 5 *East,* 230 ; *Wilkinson vs. Byers,* 1 *A. & E.,* 106 ; *Cotton vs. Godwin,* 7 *M. & Wels.,* 147 ; *Lincoln vs. Bassett,* 23 *Pick.,* 154.

In this case the notes, at the time when the compromises were made, were overdue, and it does not appear that there was any legal consideration whatever for the relinquishment, on the part of the bank, of the balance due on them, after the receipt of the one-half of their face value. There was no deed of composition with creditors, nor any release under seal given by the bank, which would have imported consideration. And in the absence of some sufficient consideration, such an agreement as that proved on the part of the appellant, and set out in his prayers, made merely by parol, is wholly inoperative, and cannot be set up or relied on by the makers of the notes, either as against the bank or the endorsers. The notes have never in fact been surrendered to the makers, and the bank was not bound to any active diligence in their collection, in order to give it the benefit of the collaterals deposited with it by the endorsers.

This view of the case disposes of the first, second and third prayers of the appellant.

His fourth prayer we understand to be abandoned. It might well be so, because the note therein referred to was clearly within the terms of the contract of the 16th of May, 1860, and the bank was well warranted in applying the proceeds of the collateral securities to its payment.

As to the fifth and sixth prayers of the appellant, relating to the bank's holding and dealing with the collateral

securities, after full payment of its claim on account of discounts, they were properly granted. For any loss or injury sustained by reason of misapplication of the collaterals by the bank, or its failure to account, after applying in good faith a sufficient amount of such collaterals to pay its claim against *Stettheimer & Affelder*, the appellant was certainly entitled to recover. And while these prayers secured to the appellant the full benefit of that inquiry before the jury, it is no objection to them, that can be taken by the appellant, that they were granted in connection with objectionable prayers offered by the appellant, and modified by the Court, and which opened a wider scope of inquiry for the appellant's benefit.

The Court below was right in granting the appellee's first prayer, as being the converse of the appellant's fourth, which was not maintainable, as we have seen.

The appellee's second prayer, however, should have been refused, though, in the view we have of this case, the granting of it was by no means prejudicial to the appellant; but, on the contrary, was a concession to him of ground of recovery, which he was not entitled to occupy before the jury. The action of the Court, therefore, in granting this prayer, is no cause for reversal.

And as to the third and fourth prayers of the appellee, we think it clear that the Court was right in granting them both. The appellee had express authority to compromise with parties indebted on the collateral securities, and we have said that agreements, such as that stated in the fourth prayer, were inoperative for want of sufficient legal consideration.

*Judgment affirmed.*

(Decided 25th June, 1869.)