## PLANK ET AL. *v.* SUMMERS

[No. 45, October Term, 1954.]

*Decided December 13, 1954.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Thomas B. Lawrence,* for appellants.

*Hal B. C. Clagett,* with whom were *Lansdale G. Sasscer, Jerrold V. Powers, Lansdale G. Sasscer, Jr.* and *Sasscer, Clagett* and *Powers,* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

On the former appeal in this case, *Plank v. Summers,* 203 Md. 552, we held that the trial court erred in limiting to pain and suffering the damages recoverable by three members of the United States Navy, for injuries sustained in an automobile accident. We remanded the case "for the purpose of allowing the value of the hospital and medical services, rendered to the appellants by the United States Government, to be added to the amounts of the judgments." We also stated (p. 556) that the principal question before us was "whether the jury should have been allowed to consider and to award the appellants, plaintiffs below, the reasonable value of the

hospital and medical services rendered to them without charge or imposition of liability by a United States Navy hospital." That question was answered in the affirmative and is the law of the case. *Cohill v. Canal Co.*, 177 Md. 412; *Chayt v. Board of Zoning Appeals*, 178 Md. 400; *Carter v. City of Baltimore*, 197 Md. 507, 513. It would serve no useful purpose to review the authorities discussed in our previous opinion in the instant case, including *United States v. Standard Oil Co.*, 332 U. S. 301, or the more recent case of *United States v. Gilman*, 347 U. S. 507, 98 L. Ed. 597, except to say that we adhere to the views previously expressed, and that we find nothing in the *Gilman* case in conflict therewith.

The appellants state the well-established principle that the trial court may not vary the mandate of an appellate court, and complain that the trial court permitted the appellees to question the reasonableness of, and the necessity for, the services rendered. We find no merit in that contention. Clearly, if the value claimed was unreasonable by comparison with the usual charges made for similar services, the defendant should be entitled to produce evidence tending to disprove or minimize the claim. Not only did our former opinion refer to the "reasonable value" of the services rendered, but we noted (p. 555) that the appellants' claim was "to recover the fair value of the services rendered by the National Naval Medical Center at Bethesda in proportion to the prevailing charge by private physicians, surgeons and institutions." We think it was implicit in the opinion that the services must be necessary, in accordance with the general rule that a plaintiff "be allowed only such damages as have been affirmatively proved with reasonable certainty to have resulted as the natural, proximate and direct effect of the injury". *Riley v. Naylor*, 179 Md. 1, 7. In answer to the appellants' contention that the burden of proof was on the appellee, insofar as a diminution of damages is concerned, it is sufficient to say that no instruction on the point was asked, and there were no objections to the court's charge by the appellants,

except for a request that the court instruct the jury "not to consider whether or not the entire hospitalization period was necessary". Since there was some evidence tending to show that the period of hospitalization, by private standards, was unreasonably extended, this instruction was properly refused. We may note, however, that necessity, in the sense of a relation of cause and effect, might well depend upon the facts of the particular case. These patients were not at liberty to return to their distant homes and employ private surgeons, nor could they receive adequate treatment in a Naval barracks. Under these circumstances the comparison with civilians loses much of its force, and we think the jury might properly consider these facts in connection with the question of necessity.

Under the court's instructions, the jury rendered verdicts of $300, $650, and $700, respectively, representing the value of the hospital and medical services rendered. The appellants argue that the smallness of these verdicts, in the light of the seriousness of the injuries sustained, was occasioned by rulings of the trial court that hampered the presentation of their case. The principal objection is to the refusal of the court to grant a continuance in order to permit them to lay a proper foundation for the introduction of the Naval Hospital records in evidence. It appears that these records were produced at the first trial, but not admitted in evidence when it was shown that the appellants were not required to pay for these services. Before the partial new trial began, the appellants had seasonably caused a *subpoena duces tecum* to be issued, addressed to the Commanding Officer at the Naval Hospital. Hospital records purporting to be the records of the appellants' cases were produced in court in the custody of a Chief Hospital Corpsman, who testified he had received them from the Chief Master-at-Arms and had brought them by direction of the Legal Officer at the Naval Hospital. Upon objection by the defense, the court ruled that a proper foundation had not been

laid. There was no objection to this ruling, and it is conceded to be technically correct.

The record does not show any request for a continuance at this point, although the stenographer noted a "side bar conference". Counsel for the appellants asserts that a request for continuance was then made and refused. Counsel for the appellee admit that the question came up at the "side bar conference", but state that the court suggested that plaintiffs' counsel telephone to the Naval Hospital, and apparently this was done. In any event, the trial of the case proceeded. The record shows that in the course of the examination of the first witness, called as a medical expert by the appellants, a motion for continuance was made and refused. The motion came after the witness had been asked his opinion as to the reasonable value of the necessary treatment by the attending physician for a fractured skull. An objection was made and sustained on the ground that while the witness had read the transcript of the previous trial wherein the attending physician had testified to his diagnosis of a fractured skull and X-ray examination, nothing was contained in the transcript in regard to treatment.

It became apparent at this point, if it was not apparent before, that a proper trial of the issues as to the value of hospital and medical services rendered could not be had without the hospital records. Counsel for the appellants stated that he had called the Legal Officer at the Naval Hospital after the summons was issued and had explained that the records should be accompanied by "someone who would be familiar with where these records were kept and that they were kept in the regular course of business". He stated that he had called the Naval Hospital "today" and that the Legal Officer had said "he had never in all his experience had a record rejected until today". Evidently, he was unwilling to detail a proper witness to identify the records. The court, however, took the position that "the responsibility rests squarely upon counsel for the plaintiffs to prepare his case and be ready for trial and that you cannot complain because

you failed to do that and ask for the unreasonable request of a continuance".

We think there was a showing of reasonable diligence on the part of counsel, and surprise on his part. It is difficult to see how he could be charged with failure to anticipate that his request to the Legal Officer would be disregarded. The statement of opposing counsel that they would have been willing to stipulate that these were the official records, had they been asked before the trial, comes with rather bad grace, for they stood firmly on the objection when the formal difficulty appeared. No doubt, the Legal Officer was annoyed that such a technical point should be pressed, as it is common practice to stipulate as to the custodianship of hospital records, reserving objections to the contents, especially where there is no real doubt as to their authenticity. But he should, of course, have been willing to comply with the court's process and request, and doubtless could have been compelled to do so by the court, despite the governmental character of the agency.

It is true that the granting of a continuance is ordinarily in the sound discretion of the trial court. *Mead v. Tydings*, 133 Md. 608, 612; *Harris v. State*, 141 Md. 526, 530; *Transit Company v. Metz*, 158 Md. 424, 454; *Millstein v. Yost*, 197 Md. 348, 350. In the first case cited the request was granted. In some of the cases cited the denial was based on a failure to show that the testimony was vital or to excuse resort to the normal procedure for the taking of depositions. But in some exceptional situations, refusal to grant a continuance has been held to be reversible error. *Nelson v. Seiler*, 154 Md. 63, 72, and cases cited. In the instant case we think the appellants were virtually denied their day in court under the mandate. The transcript of the former trial could not supply the evidence as to the precise nature and extent of the treatment. To try the case without this basic evidence was like the play of Hamlet with Hamlet left out. We think the ruling was prejudicial and amounted to an abuse of discretion under the circumstances. Cf.

*Land Finance Corp. v. St. Johnsbury Wiring Co.*, 100 Vt. 328, 137 A. 324; and *Campbell v. McCaskill*, 88 Mo. App. 44.

Indeed, the opinion evidence adduced on both sides was so general and hypothetical, in the absence of exact knowledge as to what treatment was received, that it colored the whole case. For example, estimates of the time required for hospitalization for a broken leg varied from five months to two weeks, a fractured skull and jaw, from four months to two weeks, for an operation removing the spleen, from three to four months to two weeks. There were also wide variations in the estimates of the value of the operations performed, in one instance $800 as compared to $125. All of these estimates seem to have been based not on the actual treatment, but on a theoretical treatment that might be appropriate to injuries of the nature described in the transcript of the first trial. Had the hospital records been available, and a wider latitude given to cross-examination of the experts as to the reasons for their opinions, based on the particular treatment received, we cannot believe that the differences would have been so marked. Of course, the jury was not bound to adopt the opinions expressed on either side.

"The scope to which the cross-examination may extend rests largely in the discretion of the trial judge, and his ruling thereon will not be disturbed by the Court of Appeals, unless it appears that some injustice has been done." *Williams v. Graff*, 194 Md. 516, 523, and cases cited. Some of the rulings in the instant case are supportable on this ground, particularly where there was a lack of basic data upon which to predicate an opinion. However, in at least one instance we think there was prejudicial error. Dr. Kiker, called as an expert by the defense, testified that he was a dentist and expressed the opinion that it was wholly unnecessary to hospitalize the patient Glenn for three bone fractures of the lower jaw. It may be doubted whether the witness had been sufficiently qualified to express an opinion on a surgical

matter. In any event, the court did not permit cross-examination as to matters contained in the transcript, such as the facts that the patient also had a severe concussion and was in a semi-comatose condition for two days after admission, that electro-encephalograms were made showing a cranial abnormality, and that the oral surgeon did not reduce the jaw fractures for ten days because of the brain injuries. It is peculiarly appropriate to permit cross-examination as to the reasons for an expert's opinion. *Starr v. Oriole Cafeterias,* 182 Md. 214, 219; *Marshall v. Sellers,* 188 Md. 508, 519. In summing up to the jury, the court stressed the testimony of Dr. Kiker that no hospitalization was necessary for treatment of the broken jaw. The jury may well have been misled by the implication that this opinion was unshaken and fully applicable to the case at bar.

Counsel for the appellants twice attempted to bring out in cross-examination what the transcript, which the witness testified he had read, showed in regard to this patient. Objections were sustained on the ground that "the scope of this witness's examination on direct examination is whether or not he should have been hospitalized". Counsel asked to be allowed to call the witness as his own, but this was also refused. The court stated: "you cannot have him as your witness unless you make some arrangement to employ him or unless you had summoned him here. He is only here for a limited purpose for which he came as a result of the arrangements made by defense counsel."

As pointed out in *Williams v. Graff, supra,* under the prevailing American rule, cross-examination is restricted to the point on which the witness testified on direct examination and he cannot be questioned in regard to other issues in the case. But it was stated (p. 522): "However, our rule does not go to the extent of restricting the cross-examination of the witness to the specific details inquired into on direct examination, but permits full inquiry into the subject matter entered into. Where a general subject has been entered upon in the examination

in chief, the cross-examining counsel may ask any relevant question on the general subject. In our judgment the rule limiting cross-examination to the general facts stated on direct examination should not be so applied as to defeat the real object of cross-examination, *i.e.*, to elicit all the facts of any observation or transaction which has not been fully explained." (citing cases). We think the cross-examination in the instant case was unduly restricted, because the questions were designed to test the basis of the witness's opinion, by reference to facts of which he must have been aware.

It is also a general rule that if the inquiry goes beyond the subject matter entered into on direct examination, the cross-examiner must make the witness his own, usually by calling him as such in the subsequent progress of the case. *Williams v. Graff, supra; Armiger v. Balto. Transit Co.*, 173 Md. 416, 423. See also *Bell v. United States*, 185 F. 2d 302, 310; and *Busch, Law and Tactics in Jury Trials*, § 301. Whether a party may call as his own witness an expert employed by the opposite party, and require him to express an opinion, rather than to testify as to personal observations or facts, may be open to question. See *People v. Thorpe*, 296 N. Y. 223; 72 N. E. 2d 165; *Hull v. Plume*, 131 N. J. L. 511; 37 A. 2d 53; and *Boynton v. R. J. Reynolds Tobacco Co.*, 36 F. Supp. 593. For the purposes of the instant case, it is sufficient to say that the fact that the witness was employed by the opposite party would not confer any immunity from inquiry into the factual basis of his opinion, on cross-examination or otherwise.

For the reasons stated we must reverse the judgments.

*Judgments reversed and new trial awarded, with costs.*