## THANOS ET VIR *v.* MITCHELL

[No. 265, September Term, 1958.]

*Decided June 30, 1959.*

*Motion for rehearing filed July 30, 1959, denied September 16, 1959.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Jack Pinkston,* for appellants.

*Joseph B. Simpson, Jr.,* with whom were *Vivian V. Simpson, Simpson & Simpson, H. Algire McFaul* and *T. Hunt Mayfield,* on the brief, for appellee.

HAMMOND, J., delivered the opinion of the Court.

The plaintiff Mrs. Thanos filed a written motion for a continuance because of mental illness, supported by the affidavits of two doctors that she was incapable of being in court. The defendant demanded immediate trial or dismissal of the case, and the court granted the dismissal and entered judgment for defendant for costs. The plaintiff appealed.

In June, 1956, Mrs. Thanos sued the defendant Dr. Claude Mitchell in the Circuit Court for Montgomery County for malpractice, alleging that thereby she was caused to suffer physical and mental injuries and shock which left both her physical and mental systems seriously and permanently injured, and

that she had been forced to undergo great pain and suffering. The lawyer who filed the suit obtained several continuances, and the defendant, one. The case was set for trial on May 6, 1958, in Montgomery County. Several days before that, plaintiffs' counsel withdrew from the case and the lawyer who now represents Mrs. Thanos was retained. An affidavit of removal was filed, the case was sent to the Circuit Court for Howard County, and set for trial in September, 1958, on the following November 17. Mrs. Thanos' lawyer says that during the week of November 9th he was unable to reach either Mr. or Mrs. Thanos until Friday, the 14th, about 6:00 P. M., when Mr. Thanos returned from a business trip out of town. He was then told by Mr. Thanos that his wife was ill and would not be able to go to court next week.

Mr. Thanos was told by his lawyer that he should obtain medical advice as to the seriousness of his wife's condition and, as a result, two doctors signed and swore to separate statements as to her condition, both dated November 14. One of these doctors, who had treated Mrs. Thanos for two years, stated in his affidavit that when he had examined her on that day, she was "quite confused, agitated, withdrawn, belligerent and resistive," and that she was "quite incapable of giving evidence, standing trial or being cross-questioned," but that she should be ready to stand trial in one month. The other doctor stated flatly that Mrs. Thanos was "mentally ill" and that she could not be a reliable witness and the effects of being involved in a trial at the time might easily aggravate her mental illness. Mr. Thanos, in his affidavit to the motion for a continuance, swore that his wife was mentally ill and that the doctors' certificates were authentic.

When the certificates were presented to Mrs. Thanos' counsel on the morning of Saturday, November 15, he called the lawyer in Howard County representing the defendant and Judge Macgill, telling them of the facts. When the case was called for trial on the morning of the 17th, the jury panel was in attendance, as were the defendant and two of his medical witnesses. The defendant had on call for appearance in court three other physicians. The attorney for the appellant made a statement to the court, requesting continuance until after the

Christmas holidays. The attorney for the appellee replied, detailing the very extended course of the litigation and the various postponements, as well as telling the court that Mrs. Thanos' lawyer had not told him, when they chanced to meet on the evening of Friday, November 14, that Mrs. Thanos was ill. Judge Macgill said that on Friday afternoon Mrs. Thanos' attorney had asked for a postponement of the case, not on the grounds of his client's illness, but because a doctor who was to testify for the plaintiff wished to attend a medical convention, and that it was not fair to the taxpayers, to the jury, and the public for the case to drag on and on. He indicated that he felt that if Mrs. Thanos were sick she had been sick before the affidavits were made on Friday, and said that he would deny the continuance. The plaintiff would not go to trial, and the case was dismissed.

There can be no doubt that whether to grant a continuance is in the sound discretion of the trial court, and unless he acts arbitrarily in the exercise of that discretion, his action will not be reviewed on appeal; *Harris v. State,* 141 Md. 526, 530, 119 A. 154; *Cumberland & Westernport Transit Co. v. Metz,* 158 Md. 424, 454, 149 A. 4, 565; *Millstein v. Yost,* 197 Md. 348, 350, 79 A. 2d 149. In some instances, however, refusal to grant a continuance has been held to be reversible error. *Plank v. Summers,* 205 Md. 598, 109 A. 2d 914. We think the case before us is one of the exceptional instances where there was prejudicial error. Undoubtedly, the trial court was influenced by the fact that seemingly there had been dilatory tactics over a long period of time on the part of Mrs. Thanos. We cannot overlook, however, the fact that the two affidavits of the doctors, which supported the motion, were not attempted to be contradicted or controverted, either at the time of the trial or before us, except by suspicion and conjecture. The facts and opinions of the doctors, as expressed in their affidavits, left no doubt that it would be impossible for the plaintiff to be in court to present her case. It appeared that Mrs. Thanos would be available within a reasonable time (a different situation would be presented if her illness were permanent or the prognosis was for a lengthy disability). As Judge Hen-

derson said in *Plank v. Summers, supra,* to have required the case to go to trial without her presence, would have been "like the play of Hamlet with Hamlet left out." We said in *Jackson v. State,* 214 Md. 454, 459, 135 A. 2d 638, that (as Maryland Rule 527 contemplates) "To show such an abuse of discretion and prejudice for failure to continue a case because of the absence of witnesses, the party requesting the continuance should show: that he had a reasonable expectation of securing the evidence of the absent witness or witnesses within some reasonable time; that the evidence was competent and material, and he believed that the case could not be fairly tried without it; and that he had made diligent and proper efforts to secure the evidence." The record shows that all these standards were met by Mrs. Thanos.

Courts of other states have been in almost complete accord that where the evidence that a party is ill and unable to attend court is uncontradicted and his testimony is material and there would be no real and substantial prejudice to the other side in a delay, it is an abuse of discretion to refuse continuance of his case. A case in which mental illness was also involved and in which it was held error to refuse the continuance is *Cornwell v. Cornwell,* 118 F. 2d 396 (D. C. Cir.). Other pertinent cases include: *Bernard's Fur Shop v. De Witt* (D. C. Mun. App.), 102 A. 2d 462; *Overstreet v. Citizens' Union Nat. Bank* (Ky.), 76 S. W. 2d 641; *O'Brien v. King,* 5 N. Y. S. 2d 32; *Bolduc v. Nadeau* (Me.), 148 A. 565. See also *Moore v. Moore* (Ga.), 85 S. E. 2d 12; Annot. 47 A.L.R. 2d 1058; 12 Am. Jur. *Continuances,* Sec. 15, p. 457.

The appellee moved to dismiss the appeal because the statements of counsel before Judge Macgill were not printed in the record extract by the appellant. We think the record extract sufficiently complied with the rules, and, in any event, the appellee in his appendix furnished the material which he claims should have been printed by the appellant. The motion to dismiss is denied, and the judgment of the trial court is reversed and the case remanded for further proceedings.

> *Judgment reversed and case remanded for further proceedings, costs to abide the final result.*

PRESCOTT, J., files the following dissenting opinion:

Ordinarily the question of whether or not the trial court abused its discretion in refusing to grant a continuance or postponement of a case would not warrant or justify a dissenting opinion. In this case, however, the majority opinion violates two of our rules and will have a far-reaching effect in unduly restricting the *nisi prius* judges in the conduct of their courts; hence, I feel justified in stating my views thereon.

The opinion of the Court is skillfully and persuasively written, but this is due, mainly, to the statement of the facts. I shall not say that they are overstated in order to reach the result obtained; it is fair to assert that they most certainly are not understated.

Moreover, the facts relied upon, to a great extent, are merely statements of counsel in argument in this Court. They are not contained in either the briefs or the transcript; consequently, they were not part of the record, not before Judge Macgill and not properly before this Court. For instance, the majority opinion states: "Mrs. Thanos' lawyer *says* that during the week of November 9, he was unable to reach either Mr. or Mrs. Thanos until Friday, the 14th, about 6:00 P. M., when Mr. Thanos returned from a business trip out of town. He was then *told* by Mr. Thanos that his wife was ill and would not be able to go to court next week. [He stated to Judge Macgill that he was involved in a jury trial "clear up to Friday noon" of that week. Appellee's appendix, p. 14.] Mr. Thanos was *told* by his lawyer that he should obtain medical advice as to the seriousness of his wife's condition, and, as a result, two doctors signed and swore to separate statements as to her condition * * *." (Emphasis added.) While the doctors' affidavits are in the record, all the rest of the quotation is simply the statement of counsel and, as clearly indicated, it even contains hearsay statements made to him. The danger inherent in reversing the action of a trial court upon the mere statements of counsel or of setting them forth as facts in a case—no matter how great the integrity of counsel—seems so apparent and grave that it should require little argument

to condemn the practice. As a matter of fact, I feel bound by the record, in the absence of stipulation of counsel to the contrary. In addition, it is completely unfair to the trial court. I can find no justification in law or in reason to consider as facts statements of counsel made in argument here that do not appear by the record to have been made to the trial court and to hold that he abused his discretion and acted arbitrarily. It has always been my understanding that it is the duty of one who desires to take an appeal to perfect the record for the same by offering testimony, affidavits or stipulations; I know of no principle of law or rule of court that permits counsel to make up the record by his statements in argument.

I shall now state the facts as they appear in the appendices. The appellant, Mrs. Thanos, underwent surgery at the hands of the appellee on June 24, 1953. On June 22, 1956, just before limitations would have run, she filed suit alleging malpractice by the defendant. He was a delegate to a medical convention that was due to assemble in Europe shortly thereafter, so, he tried to get the case advanced for trial, but, upon being unable to do so, asked for, and obtained, a continuance (apparently without objection from the appellants) until his return. Upon his return, the case was set for trial on December 4, 1957. On December 3, 1957, at the request of the plaintiffs, over objection by the defendant, the case was removed from the trial calendar. The court, at that time, instructed counsel for the plaintiffs to notify counsel for the defendant not later than January 6, 1958, whether the case would be tried or dismissed. Counsel for the defendant were never notified. However, (the transcript shows) on January 16, 1958, the depositions of Dr. Huse—who had treated Mrs. Thanos in 1956 and made one of the affidavits filed with the motion for a continuance—and Dr. Demas were taken by the plaintiffs.[1] The case was again set for trial on May 5, 1958.

1. A reading of the depositions, which were before Judge Macgill, shows little hope of the plaintiff being successful. Dr. Huse said, when he first saw her, she blamed her husband for many things he didn't do and "had all kinds of delusions about what people said." Much of her complaint in her declaration concerns what the doctor told her. The doctors, upon pressing inquiry by

On May 5, 1958, a line was filed striking out the appearance of her then counsel, together with an affidavit of removal. The case was removed to Howard County for trial. Sometime in September, 1958, it was set for trial on Monday, November 17, 1958, with both sides having due notice of the same. The defendant notified his witnesses and was prepared for trial. The plaintiffs, apparently, did nothing. The clerk's office called the plaintiffs' counsel early in the week of November 10, 1958, to remind him of the trial date. Word was left at his office as he was in the trial of a jury case "clear up to Friday noon." During the afternoon of Friday, he called Judge Macgill and requested a postponement *on the ground that one of his witnesses, a doctor, wanted to attend a convention in Ohio.* When the plaintiffs were unable to obtain postponement on that ground, they produced, *on the morning of the trial date,* the two affidavits saying Mrs. Thanos was not able to testify due to her mental condition. There was no showing that any witnesses had been summoned by the plaintiffs or that any real attempt was made to prepare the case for trial. The affidavits fail to state how long Mrs. Thanos had been in her then condition, and, if it had existed for some time, why the court was not notified sooner. Her deposition had been taken and was on file. There is little doubt that if the plaintiffs had presented affidavits of the nature of those filed herein to Judge Macgill with a reasonable explanation as to why they were produced so late and without a background of procrastination and obviously delaying tactics, he would have granted them a postponement. But to hold that he abused his discretion in not granting the same under the above circumstances gives no consideration to the previous decisions of this Court which state that the granting of a motion for a postponement is in the sound discretion of the trial court. These cases are cited in the majority opinion. Also, an examination of the affidavits will show that they do not comply with Rule 527 c 2.

---

the plaintiffs' counsel, could not say there was anything wrong with what the appellee did, but, at least one of them stated that what he had done was right. These depositions, unquestionably, were the cause of plaintiffs' then counsel retiring from the case.

The majority say that the trial of the case without Mrs. Thanos would be similar to producing the play, *Hamlet,* without Hamlet. It fails, however, to mention the fact that cases of this nature caused Hamlet to suggest that it would, perhaps, be better to commit suicide than to stand the law's delay. It has now been more than six years since the defendant operated upon Mrs. Thanos and he has demonstrated and shown, without doubt, that he and his counsel have done everything humanly possible to bring the issue to trial, but have been thwarted in doing so by the dilatory conduct of the plaintiffs. It doesn't take any great amount of experience to see that the case, in all probability, will never be tried; and, if it be, it is doubtful that it will reach the jury.

The majority state, "we cannot overlook" the fact that the two affidavits of the doctors were "uncontradicted and uncontroverted." This would be an understandable statement had the affidavits been filed a reasonable time before the trial date, but how could the defendant be expected to contradict the affidavits filed in Ellicott City on the morning of the trial, with Mrs. Thanos, presumably, in Silver Spring?

There is another completely sound ground upon which the action of the lower court should be sustained. The appellants printed in the appendix to their brief the motion for a continuance, the affidavits of the two doctors, the court's oral opinion and nothing else. The appellees filed a motion to dismiss the appeal. Rule 828 a states: "The appellant shall cause to be printed * * * as an appendix to his brief extracts from the record * * *." And Rule 828 1 b provides that the printed extract shall contain, "so much of the evidence, pleadings or other parts of the record as is material to any question the determination of which depends upon the sufficiency of the evidence, pleadings or other matter contained in the record to sustain any action, ruling, order or judgment of the lower court." It seems obvious from the statement of what the appendix contained that Rule 828 was not complied with; yet, the majority opinion states, "we think the record extract sufficiently complied with the rules." It would seem entirely in order to have this statement enlarged upon in order to show how the appellants' appendix complied with the rules, and how

398

it can be reconciled with such cases as *Platt v. Wilson,* 191 Md. 371, 62 A. 2d 191; *Naughton v. Paul Jones & Co.,* 190 Md. 599, 59 A. 2d 496; *McBurnie v. McBurnie,* 214 Md. 210, 134 A. 2d 78, and the many cases referred to therein. In the *Platt* case, Judge Henderson, speaking for the Court said: "We have indicated in several recent cases that this Court will not undertake to pass upon testimony contained in the transcript, but not printed in an appendix to the brief, * * * so as to be available to each member of the Court." In the *Naughton* case, *supra,* Judge Markell, in delivering the opinion of the Court, stated:

> "If the appellant's brief contains a statement of facts which the appellee accepts as accurate and sufficient, no evidence in appellant's appendix and no record references are necessary. *But, in the absence of a stipulation between the parties, an appellant would act at his peril.* If his statement of facts is disputed by his adversary and is not supported by evidence *in his* appendix, the only questions reviewable are questions which may be *decided on facts that are not disputed."* (Emphasis added.)

If we strip the statements of counsel for the plaintiffs in argument in this Court from the facts in the case, as should be done in accordance with our Rules and previous decisions, the holding of the majority is that a trial judge must grant a postponement, when the affidavits of two physicians stating that a party to the suit is unable to be present due to physical ailments, no matter what the background of the case is and even though the affidavits are filed on the morning of the trial. This, in effect, makes a postponement depend upon the discretion of two doctors and not the trial courts. The trial judges should have every reasonable right to conduct their courts in an expeditious and efficient manner, and they should not have the work of their courts impeded by the dilatory conduct of litigants. Their action in granting or refusing to grant postponements should only be reversed upon a *clear showing* by the appellant that an abuse of discretion has occurred. I think the appeal should be dismissed for failure

to comply with Rule 828 in regard to the inadequacy of the appellants' appendix; but, if the appeal be not dismissed, the order of Judge Macgill should be affirmed on the merits.

Judge Horney has authorized me to say that he concurs in this dissent.