MARTIN ET AL. *v.* ROSSIGNOL, ET AL.

[No. 272, September Term, 1960.]

*Decided October 10, 1961.*

The cause was originally argued before BRUNE, C. J., and HENDERSON, PRESCOTT, HORNEY and MARBURY, JJ.

It was reargued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

Argued and reargued by *Thomas G. Andrew,* with whom were *Rollins, Smalkin, Weston & Andrew* on the brief, for appellants.

Argued and reargued by *James S. McAuliffe, Jr.*, for Great American Indemnity Company, an appellee; and by *Alger Y. Barbee*, with whom was *Harper M. Smith* on the brief, for Douglas C. Rossignol, the other appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a judgment for the plaintiff entered by the court, sitting without a jury, in a suit filed by a police officer and the insurance carrier under Workmen's Compensation. The plaintiff was seriously and permanently injured in line of duty while pursuing a motorist, James Kenneth Martin, who was driving a Mercury owned by his father. The appellant raised only two issues on appeal, whether the trial court abused its discretion in refusing to grant a continuance, and whether the plaintiff was guilty of contributory negligence as a matter of law. On the latter question we ordered reargument before the whole Court.

When suit was filed in Montgomery County, Thomas G. Andrew of Baltimore entered his appearance and that of his firm for both defendants. The appearance of J. Hodge Smith of Rockville was also entered for the defendants. General issue pleas were filed, interrogatories were answered by the plaintiff, and in January, 1960, the case was specially set for trial on May 16, 1960. On Friday, May 13, 1960, Mr. Smith met with plaintiff's counsel for the taking of a deposition sought by the defendants and to examine the plaintiff's employment record. Mr. Smith informed plaintiff's counsel that he would seek a removal on Monday upon affidavits already prepared which would be executed over the weekend. But on the morning of trial Mr. Smith stated that he had been unable to obtain the affidavits and filed a motion to strike the appearance of all counsel for the defendants, on the ground that the defendants had left the County without leaving a forwarding address. The court denied the motion. Mr. Smith then filed a motion for continuance on the ground that the defendants were not in court and that Baltimore counsel was trying a case in Baltimore. He did not say that he, Mr. Smith, was otherwise unprepared for trial. Plaintiff's counsel objected, on the ground that if the case were postponed the

plaintiff, due to his declining physical condition, might not be able to testify, and because the medical witnesses had reserved that day for their appearance and were in court. The court denied the motion, and the case then went to trial without a jury.

The appellant relies not only upon the refusal of the motion for continuance but also upon the refusal of motions for a new trial and to strike out the judgment, or reopen the case for additional testimony. The ground of these motions was that Mr. Smith had not been prepared to try the case, and that Mr. Andrew had been engaged in the trial of a case in Baltimore City which had begun on May 9 but had not been completed on May 16.

We find no abuse of discretion in the refusal of the motion for a continuance. Mr. Smith did not inform the court that he was unprepared to try the case. His motion was based primarily on the fact that he could not reach the defendants. Yet it was shown that the change of their address had been filed with the Commissioner of Motor Vehicles, and apparently no effort had been made to notify the defendants of the trial date when the case was set for trial in January. With reasonable diligence it would appear that counsel for the defendants could have learned of the change of address and could have notified their clients of the trial date without waiting until the eleventh hour. The fact that Baltimore counsel was engaged in another court was a circumstance to be weighed but not controlling. See Note, 112 A.L.R. 593, 600. It is generally held that a refusal of a continuance because counsel are engaged elsewhere is not an abuse of discretion if the party is adequately represented by other counsel present. Except for the absence of his clients, Mr. Smith seems to have conducted the defense with vigor and understanding. The cases of *Plank v. Summers*, 205 Md. 598 and *Thanos v. Mitchell*, 220 Md. 389, are readily distinguishable, and in the recent case of *Eastover Co. v. All Metal Fabr.*, 221 Md. 428, 437, were described as falling into a "small and exceptional group of cases". Cf. *Hohensee v. Wash. Sub. San. Comm'n*, 226 Md. 361.

It is well settled that the denial of a motion for a new trial

is not appealable, at least where the trial court fairly exercises its discretion. See *B. J. Linthicum's Sons, Inc. v. Stack,* 213 Md. 344, 347. If the motion to strike or reopen the judgment could be considered as one to set aside the verdict on the ground of mistake or surprise, we find no abuse of discretion. It would seem to be in the nature of an amplification of the earlier motion for a continuance. There is no showing that the defendant driver had a meritorious defense, or that his testimony would have contradicted that of the plaintiff in any particular bearing upon the only other issue presented in the appellants' brief, as to the contributory negligence of the plaintiff.

The plaintiff testified that he and a fellow officer, Moore, had stopped two vehicles for traffic violations on Georgia Avenue at about 10:30 P. M., when they saw a car approaching at a high rate of speed. Moore tried to stop it with flashlight signals, but the car continued and, indeed, increased its speed. Moore only escaped from being struck by jumping into the ditch alongside the road. The plaintiff testified he believed Moore had been struck and took out after the speeder in his patrol car, with his overhead light flashing and siren sounding at full blast. The speeder turned off the main road, Georgia Avenue, into Weller Road, and turned off his lights. Weller Road, 24 feet wide, runs through a residential district. The plaintiff testified that because of the danger to other moving traffic and the high rate of speed it was his "responsibility to get him stopped as quickly as I could before he damaged any other vehicle". When he had "closed up the gap", a glance at his speedometer showed that it registered over 100 miles per hour. At one intersection they narrowly missed another car in the act of crossing. The chase then continued along Weller Road for a distance of 4 or 5 blocks.

The plaintiff was familiar with Weller Road and knew that it came to a dead end about 500 feet beyond its intersection with Bushey Drive. He thought he would be able to corner the offender in the *cul de sac*. However, the latter, without decreasing his speed, attempted to make a left turn into Bushey Drive. The car tipped and when the driver tried to straighten it out the Mercury skidded backwards down Weller Road. The plain-

tiff immediately put on his brakes but was unable to avoid striking the other car. The impact was not very great, causing no property damage except dented fenders. Another officer testified to skid marks of 216 feet left by the Mercury, and 180 feet for the patrol car to the point of impact. Another officer testified that Martin admitted that he was driving the Mercury, that he was aware of the pursuit, and that he tried to escape because his driving license had previously been revoked.

It is well settled that persons driving emergency vehicles are not relieved of all duty to use due care. Code (1957), Art. 66½, sec. 183 (c) provides that "No driver of any authorized emergency vehicle shall assume any special privilege under this article except when such vehicle is operated in response to an emergency call or in the immediate pursuit of an actual or suspected violator of the law." Section 214 provides: "The prima facie speed limitations and provisions relative to right of way stopping at through highways, rules of the road, traffic-control devices and signals set forth in this article shall not apply to authorized emergency vehicles when responding to emergency calls and the drivers thereof sound audible signal by bell, siren, or exhaust whistle. This provision shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the street, nor shall it protect the driver of any such vehicle from the consequence of a reckless disregard for the safety of others." Section 235 (a) requires other vehicles to yield the right of way to emergency vehicles, and to pull to the curb and stop, but subsection (c) provides that "This section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway."

In *Baltimore Transit Co. v. Young*, 189 Md. 428, it was held that the driver of an emergency vehicle, a trouble wagon of the Transit Company, crossing against a red light with its lights flashing and siren sounding, was not guilty of negligence in striking a vehicle crossing upon a green light, and that the trial court should have directed a verdict for the Transit Company. In the recent case of *Baltimore City v. Fire*

*Ins. Salvage Corps,* 219 Md. 75, involving the collision of two emergency fire vehicles, each sounding signals, we said that the Maryland statute renders the operators of emergency vehicles "liable for ordinary negligence, namely, a failure to exercise reasonable care and diligence under the circumstances." But it was pointed out that such operators, when making the prescribed signals, are given a qualified privilege from the statutory rules of the road, including speed regulations, although they are "bound to exercise reasonable precautions against the extraordinary dangers of the situation that the proper performance of their duties compels them to create."

In *Sudbrook v. State,* 153 Md. 194, the plaintiff, a motorcycle officer, allegedly in chase of a speeding motorist, struck the side of a loaded truck entering the main highway at an uncontrolled intersection. It was held that the officer was guilty of contributory negligence as a matter of law. Under the undisputed evidence, while travelling at a high rate of speed, he failed to sound his horn to warn the driver of the truck, which was in plain view for a distance of 150 feet, and entitled to the right of way under the statutes then in effect. The court distinguished the earlier case of *Rosenthal v. Durkin,* 142 Md. 18, where it was held that a jury question was presented as to whether the speed of the police officer who collided with another vehicle was contributory negligence.

The cases generally recognize that speed alone is not negligence *per se,* in the case of emergency vehicles making the prescribed signals. The appellant relies heavily upon the case of *City of Kalamazoo v. Priest,* 49 N. W. 2d 52 (Mich.). It was there held that the operator of an emergency fire vehicle, striking a bus in an intersection, was guilty of contributory negligence as a matter of law, since it was undisputed that he did not see or heed the bus entering the intersection, and hence did not drive with due regard for the safety of others. But in the later case of *McKay v. Hargis,* 88 N. W. 2d 456 (Mich.) the court distinguished the *Priest* case, and held that a police officer, pursuing a traffic violator at a speed of 90 miles per hour, was not guilty of contributory negligence as a matter of law, when a sudden unsignaled turn by the pursued

forced him to elect between striking the pursued vehicle and striking a tree. We think this case is almost directly in point on the facts, and is persuasive.

In the instant case the police officer was not in pursuit of a mere speeder, but of an operator who he believed had struck or run down another officer. The plaintiff might therefore reasonably have believed that the offender was a hit-and-run driver. The fact that the offender, in an effort to escape, had turned off his lights and increased his speed through a residential district to some 100 miles per hour, presented a serious danger to the safety of others. It may well be that the plaintiff's election to pursue closely, with lights flashing and siren sounding, afforded a better warning to others using the highway than if he had permitted him to escape. At least we think the minds of reasonable men might differ as to whether the election to pursue, in the performance of his official duty to apprehend, was reasonable under the circumstances.

Moreover, the actual collision was not with another vehicle using the highway, but with the vehicle pursued, and the statute does not, in terms, prescribe a duty on the part of the officer to use care for his own safety, or for the safety of an offender whose reckless conduct is the only occasion for the exercise of the officer's privilege, if not his duty, to disregard the ordinary speed regulations. It might well be contended that the statute is only concerned with the safety of the non-participants in such a chase.

We need not decide, however, the scope of the officer's duty in these respects. If we assume, without deciding, a duty to use ordinary care for his own and the offender's safety, we think the trial court might properly have found from the evidence that, had the offender driven into the *cul de sac,* the police officer would have been able to reduce his speed and stop without collision, in the 500 feet between Bushey Drive and the dead end of Weller Road. In fact, the officer did stop in a distance of approximately 200 feet, with a very slight impact, which suggests that his speed was not unreasonable under the circumstances. Indeed, this fact would even afford a reasonable basis for a finding that the plaintiff's speed was not actually a proximate cause of the accident. The cause of the collision was clearly the desperate effort of the offender

to make an impossible turn into Bushey Drive. Whether the plaintiff should have reasonably anticipated such action, would seem to be a proper question for the trier of fact. Faced with the emergency, it would appear that the plaintiff made the best stop possible in the situation then presented. Under all the circumstances of the case, we think the issue of his contributory negligence was for the trier of fact.

*Judgment affirmed, with costs.*