907 A.2d 807

**Tara M. TOUZEAU**

v.

**Scott E. DEFFINBAUGH.**

**No. 126, Sept. Term, 2005.**

Court of Appeals of Maryland.

Sept. 19, 2006.

Stephen J. Cullen (Miles & Stockbridge P.C., Towson; Todd M. Reinecker, Miles & Stockbridge, P.C., Baltimore), all on brief, for Petitioner.

Debra Gardner, Baltimore, Brief of Amici Curiae Public Justice Center, Legal Aid Bureau and Maryland Volunteer Lawyers Service.

Stephen H. Sachs, Wilmer, Cutler, Pickering, Hale & Dorr, LLP, Baltimore, of Counsel for Petitioner.

David C. Driscoll, Jr. (Monica G. Harms, Stein, Sperling, Bennett, De Jong, Driscoll & Greenfeig, P.C., Rockville), on brief for Respondent.

Argued Before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

BATTAGLIA, Judge.

This case presents us with the question of whether the trial judge abused his discretion when he denied the motion of Petitioner, Tara M. Touzeau, for continuance of a hearing to modify child custody. We hold that the trial judge did not abuse his discretion in denying Ms. Touzeau's motion and therefore affirm the judgment of the Court of Special Appeals.

### *Facts*

Tara M. Touzeau and Scott E. Deffinbaugh are the biological parents of Victoria, born on June 27, 1994. In 1997, Ms. Touzeau and Mr. Deffinbaugh presented to the Circuit Court for Montgomery County a Child Custody, Visitation, and Child Support Agreement, which was adopted by the court and afforded the two shared legal custody of Victoria, granted Ms. Touzeau primary residential custody of their daughter, and gave Mr. Deffinbaugh liberal visitation rights. The agreement also provided that a party relocating outside of the D.C./Baltimore Metropolitan area would provide the other with at least sixty days' advance notice.

Since entering into the Agreement, Ms. Touzeau and Mr. Deffinbaugh have had numerous skirmishes in the courts. In

1999, Mr. Deffinbaugh, through counsel, moved to enforce the agreement's terms because he alleged that Ms. Touzeau was interfering with his mid-week visits with Victoria. The parties, both represented by counsel, were able to settle the dispute out of court by agreeing to greater visitation rights for Mr. Deffinbaugh.

In 2001, Ms. Touzeau, through counsel, petitioned to reduce Mr. Deffinbaugh's visitation schedule, and Mr. Deffinbaugh responded by requesting that he be granted residential custody of Victoria. The court subsequently ordered a custody/visitation evaluation, the report of which stated that, although Ms. Touzeau has "done much to contribute to the disputes between the parents," and has "little insight into how she is contributing to the problems," a change of residential custody at this point would not be in Victoria's best interests," and therefore recommended that the arrangement remain constant. A three-day trial ensued, at which both parties were represented by counsel, after which the judge ultimately ordered that Victoria continue to reside with Ms. Touzeau, that the two parents continue to share legal custody, and that Mr. Deffinbaugh be granted greater visitation rights.

In 2002, Mr. Deffinbaugh, pro se, filed an emergency motion to prohibit Ms. Touzeau from withdrawing Victoria from her private school in order to home school her, to which Ms. Touzeau responded, without the assistance of counsel. The court held an emergency hearing and ordered that Victoria be returned to school. Ms. Touzeau subsequently filed a motion requesting that she be granted sole legal custody of Victoria, and a hearing was held before a master on the merits of Ms. Touzeau's motion, at which both parties represented themselves. After hearing argument by both parties, the master recommended that Ms. Touzeau's motion be denied, and Ms. Touzeau subsequently filed exceptions on her own to the master's recommendations. The court agreed with and adopted the master's recommendations and ordered that Ms. Touzeau and Mr. Deffinbaugh continue to share legal custody of Victoria, that Victoria continue to live with Ms. Touzeau,

and that Mr. Deffinbaugh continue to have liberal visitation rights.

On September 1, 2004, Ms. Touzeau informed Mr. Deffinbaugh that she and Victoria would be moving from Silver Spring to Churchton, Maryland [1] in two weeks, and Ms. Touzeau and Mr. Deffinbaugh agreed to meet with a court-appointed parent coordinator on September 22 to discuss Mr. Deffinbaugh's new visitation schedule and Victoria's schooling. During the meeting with the coordinator, Ms. Touzeau announced that she and Victoria would be moving to Churchton on October 2, and that Victoria would be attending a new school, the Cardinal Hickey Academy, beginning October 4. The two were not able to come to any agreement as to Mr. Deffinbaugh's new visitation schedule.

On September 28, Mr. Deffinbaugh, through counsel, filed an emergency motion for modification of custody and attorney's fees in the Circuit Court for Montgomery County, alleging that Ms. Touzeau's divorce from her husband and relocation to Churchton constituted a material change in circumstances sufficient to justify a modification in the custody arrangement. In his motion, Mr. Deffinbaugh requested injunctive relief prohibiting Ms. Touzeau from relocating Victoria to Churchton, temporary primary physical custody of Victoria until a court evaluation and a hearing on his petition could be conducted, and permanent primary physical custody of Victoria. When Ms. Touzeau later moved with Victoria to Churchton, Mr. Deffinbaugh amended his motion to include a request that Ms. Touzeau be held in contempt of court for restricting his access to Victoria through the relocation. Ms. Touzeau, proceeding pro se, responded by filing a petition for an emergency order and counter-petition to modify custody requesting tie-breaking authority with respect to legal custody of Victoria to enable her to relocate Victoria to Churchton and

---

1. Churchton is located in Anne Arundel County approximately forty miles southeast of Ms. Touzeau's former residence in Silver Spring, which is located in Montgomery County, and fifty miles southeast of Mr. Deffinbaugh's residence in Olney, which also is located in Montgomery County.

to enroll her in a new school. She also amended her initial petition, after she moved, to include a request that Victoria's visitation schedule with Mr. Deffinbaugh be altered so that Victoria no longer would be required to visit with her father during the school week because of the length of the commute. An expedited scheduling conference was set for September 30, 2004, at which Mr. Deffinbaugh appeared with counsel and Ms. Touzeau appeared pro se. The judge ordered that another custody/visitation evaluation be conducted, the results of which were to be announced at a January 21, 2005 settlement conference, and set a custody modification hearing for February 8, 2005.

The parties convened before a master at the January 21 settlement conference and were presented with the results of the court-ordered Custody/Visitation Evaluation Report. The evaluator recommended that Mr. Deffinbaugh be granted both residential and legal custody of Victoria and that Ms. Touzeau be consulted on major decisions with regard to Victoria and that she be granted liberal visitation. On January 28, 2005, Ms. Touzeau filed a motion for continuance of the February 8 custody modification hearing, alleging that, in light of the court evaluator's "unfounded recommendations," she was attempting to obtain pro bono counsel. The motion was denied.

At the custody modification hearing, convened on February 8, 2005, Mr. Deffinbaugh appeared with counsel and Ms. Touzeau appeared pro se. Before the proceedings began, Ms. Touzeau renewed her request for a continuance, and the following dialogue ensued:

THE COURT: I'm going to hear your motion to continue, and then whatever happens with that will either be heard by someone today or whenever they get to it or—

MS. TOUZEAU: Okay. With regards to the, I'm sorry.

THE COURT: Go ahead.

MS. TOUZEAU: Okay. With regards to the continuance. I filed a continuance following our pre-trial conference in light of the unwarranted findings and recommendations of the Court evaluator's report. That was on January 21, 2004.

The master recommended at that time, because I was pro se, that I should seek counsel in light of the findings. I filed a motion for continuance. It was opposed by plaintiff and for the fact that it was considered a delaying tactic and it was denied. However, I have taken many steps even before to try to secure pro bono representation through, I tried to go through the legal aid bureau and they said they would only be able to even evaluate it if I got a continuance, which was denied. Last Thursday I met with Stephen Cullen of Miles and Stockbridge, he's a partner and the director of pro bono services for Miles and Stockbridge and he is willing to represent me on a pro bono basis, but was unable to file a line of appearance because he already had another commitment at today's hearing date. I have an affidavit from Mr. Cullen.[2] May I approach?

THE COURT: I don't need that.

MS. TOUZEAU: You don't?

THE COURT: No. Go ahead.

MS. TOUZEAU: So I would like to request a continuance in light of the fact that this is a serious nature regarding my daughter, so that I may be able to proceed with counsel.

THE COURT: All right. What I'd like to do is to decide the continuance issue first and then we'll see where we go

---

**2.** The affidavit, which Ms. Touzeau filed on February 14, 2005, stated:

I, Stephen J. Cullen, Esquire, being duly sworn, depose and say as follows:

1. On Thursday, February 3, 2005, Ms. Tara Touzeau contacted me to see if I could represent her pro bono in her custody trial scheduled for Tuesday, February 8, 2005.

2. I am the firm's Director of Pro Bono Services and a partner at Miles & Stockbridge P.C., One West Pennsylvania Avenue, Suite 900, Towson, Maryland 21204.

3. Unfortunately, I am in a pre-scheduled mediation in the Circuit Court for Howard County in the case of *Wilhelm v. Wilhelm*, Case. No.: 13–C–04–058298 DL on February 8, 2005 and am therefore unable to enter my appearance and appear at the trial on a pro bono basis as requested by Ms. Touzeau.

4. This firm will represent Ms. Touzeau pro bono in the event that the trial is continued to a later date.

I SOLEMNLY AFFIRM under the penalties of perjury and upon personal knowledge that the contents of the foregoing paper are true.

after that, but I definitely want to figure out whether it's going to be heard today or not. All right. Anything else on your motion to continue?

MS. TOUZEAU: No.

Mr. Deffinbaugh responded that he was opposed to a continuance because of the urgency of the matter and argued that Ms. Touzeau had ample time to obtain counsel and that the request was nothing more than a delay tactic. Ms. Touzeau responded:

MS. TOUZEAU: Okay. I think it needs to be also pointed out to the Court that at the pre-trial conference, which was January 21st, is the first time we were even orally presented with the recommendations and findings. They vastly differed from the Court evaluator's report that had been done just a few years previous. And, in addition to that, I only received from the Court evaluator the full report five business days ago. And it is very clear from that report that Victoria's wishes are being considered.

But, as you know, the Court evaluator's report is not non-party and not non-adversarial and she has not been appointed a Guardian Ad Litem, which should have been and is appropriate at this point, considering the fact that they are taking into consideration her views.

Additionally, and more importantly, the recommendations of the Court evaluator are highly, are gathered from just hearsay and double hearsay and triple hearsay and her findings are unwarranted and have no factual basis. So it's very important for my daughter's best interest for us to continue this so I can proceed with representation in order, because of this obstacle that has been unjustly thrown into the mix of things five business days ago. This isn't a scrambling tactic, Your Honor, this is a valid request based on the circumstances of the findings of the report that are unwarranted. And in the best interest of my daughter and considering that no Guardian Ad Litem has been appointed for her, I think that that's necessary and another reason why this should be continued.

* * *

THE COURT: [Counsel for Mr. Deffinbaugh's] point, Ms. Touzeau, is that since September you've known that this was at issue and you could have sought counsel whether retained with money or a pro bono attorney, you had that much time.

MS. TOUZEAU: I understand that, and in terms of with money, I'm not in a financial position to pay for counsel. I still have legal debt from the time we were in a three-day trial, two hearings ago.

THE COURT: But you had that situation beginning in September.

MS. TOUZEAU: I understand that. And I was actually, I've gone through Montgomery County. I was speaking to Legal Aide Bureau before we actually heard, before we actually came to the, it was actually on the 21st is when we were here getting the oral recommendations, the summary and I had already been in contact with them.

But, as you know, it is very difficult, most particularly in custody cases, to secure pro bono representation. And it was only by a Godsend that last Thursday I found Stephen Cullen who is partner and the director of pro bono services at Miles and Stockbridge, who was willing to come in. But he was already committed today and I have an affidavit from him saying where he is, saying he is willing to represent me on a pro bono basis.

The trial judge subsequently denied Ms. Touzeau's request for a continuance, stating:

THE COURT: It seems to me that Ms. Touzeau had plenty of time as this case was pending to seek and be able to find someone perhaps to represent her in this. It's a crisis that I think unfortunately has been generated by Ms. Touzeau waiting until the very last to seek counsel.

So the Court's ruling on the renewed oral motion to continue is denied.

The custody modification hearing proceeded with Ms. Touzeau representing herself. She called various witnesses: the pas-

tor of her church, who also founded the Cardinal Hickey Academy, who testified to Victoria's acclimation to the Academy and to Ms. Touzeau's relationship with both her own family and with Victoria; Ms. Touzeau's mother and her aunt, both of whom testified to Ms. Touzeau's and Victoria's family life and mother-daughter relationship. Ms. Touzeau also testified on her own behalf regarding her maternal abilities and the fact that Churchton was located within the Washington/Baltimore metropolitan area; cross-examined each of Mr. Deffinbaugh's two witnesses, Mr. Deffinbaugh and his wife, and introduced ten exhibits into evidence comprised of a copy of the Cardinal Hickey Academy's philosophy and mission statement; the report of the court-ordered custody/visitation evaluation conducted in 2001; the transcript of the 2002 hearing before the master; the separation agreement between Ms. Touzeau and her husband; a host of e-mails between Ms. Touzeau and Mr. Deffinbaugh regarding Victoria's visitation schedule; driving directions from Mapquest from Ms. Touzeau's former residence in Silver Spring to her new residence in Churchton, from Mr. Deffinbaugh's residence to Ms. Touzeau's previous residence in Silver Spring, and from Mr. Deffinbaugh's residence to Ms. Touzeau's new residence in Churchton; a computer printout from a website, e.Podunk.com, listing Churchton as within the Baltimore metropolitan area, and Victoria's report card from her new school.

After Ms. Touzeau and counsel for Mr. Deffinbaugh gave their closing arguments, the trial judge iterated that:

One of the comments, one of the paragraphs that's been read and re-read, is the one in the December 20, 2001 evaluation which is [Ms. Touzeau's] Exhibit 2 on page 10. The full paragraph states 'Mrs. Touzeau does not seem to understand that Victoria needs her father to be involved in her life on his own terms, not just when she finds it convenient or acceptable. The parties appropriately have joint custody, yet she had numerous times made decisions unilaterally which are debatable as to whether they were in Victoria's best interest. She has little insight into how she is contributing to the problems and she seems to have

difficulty accepting that she cannot control what goes on when Victoria is with her father. Her propensity to become upset has been very upsetting to the child who desperately wants to please her and her father both. Her decision to stop Victoria's counseling with the school counselor, even temporarily, is a concern.'

\* \* \*

In reading that paragraph and listening to the testimony that I have heard today and what has transpired since that time, I do not believe that there has been any change in that opinion or that conclusion.

\* \* \*

Having taken into account the best interest of Victoria and, frankly, this is a reluctant decision because I do think that there are a number of positive things about Ms. Touzeau and the efforts that she has taken on behalf of her daughter, but I cannot ignore what I believe is a pattern of behavior of eliminating her father, Victoria's father from Victoria's life in her efforts to control Victoria regardless of what Mr. Deffinbaugh believes or perceives as being the correct approach, totally disregarding any input by Mr. Deffinbaugh and particularly the cessation of counseling after it had been court ordered, after it had been recommended in 2001.

Mr. Deffinbaugh was awarded both residential and legal custody of Victoria, and Ms. Touzeau was granted liberal visitation rights.

Ms. Touzeau, through the same pro bono counsel who was unable to attend the hearing, noted a timely appeal to the Court of Special Appeals. In an unpublished opinion, the intermediate appellate court affirmed the trial judge's denial of both Ms. Touzeau's pretrial motion for a postponement and her renewal of that motion on the day of the hearing. The court based its holding on the fact that, despite having had four months to prepare for the custody modification hearing,

Ms. Touzeau waited until the last moment to file a motion for a postponement, having filed the motion only eleven days before the scheduled trial date. The Court of Special Appeals also concluded that the fact that the parties were not presented with the results of the custody/visitation evaluation until two weeks before the hearing did not require that a continuance be granted because they had been informed at the September scheduling conference that the results would be available to them in January. The court also determined that the trial judge correctly denied Ms. Touzeau's request for a continuance because of the policy established by the Administrative Order of the Court of Appeals for Continuances,[3] instructing that counsel should not expect continuances of proceedings in cases in which counsel accepted employment after having already scheduled a proceeding on the same date in another case.[4]

---

3. The Administrative Order to which the Court of Special Appeals referred is entitled "Revised Administrative Order For Continuances For Conflicting Case Assignments Or Legislative Duties," promulgated by Chief Judge Robert C. Murphy on May 15, 1995. The pertinent parts are:

   2. *RESPONSIBILITIES OF COUNSEL.*

* * *

   b. If counsel accepts employment in a case in which a date or time for argument, hearing, or trial has already been set after [the] counsel has been notified of a conflicting assignment for the same date or time, [the] counsel should not expect to be granted a continuance.
   c. If a conflict in assignment dates develops after representation has been accepted, counsel shall make every effort to obtain the presence of a partner or associate to act in one of the cases before a continuance is requested. Obviously, this provision is subject to obligations counsel may have to the client. However, a request for continuance because of conflicting cases should include a statement that it is not practical for a partner or associate to handle one of the conflicting cases.

4. The Court of Special Appeals also held that the trial judge did not abuse his discretion in denying Ms. Touzeau's request to have a guardian ad litem appointed to Victoria or in determining that a material change in circumstances existed justifying a modification in the custody and visitation arrangements. These issues were not raised in Ms. Touzeau's petition for writ of certiorari to this Court, and we therefore do not reach them.

We granted Ms. Touzeau's petition for writ of certiorari to address the following issue:

Whether the Court of Special Appeals erred when it held that the circuit court did not abuse its discretion in denying Ms. Touzeau's request for a continuance of a contested hearing so that she could be represented by counsel.

*Touzeau v. Deffinbaugh*, 391 Md. 114, 892 A.2d 477 (2006).

## Discussion

Ms. Touzeau contends that, because the hearing to modify custody implicated her fundamental right to parent, she had a due process right under Article 24 of the Maryland Declaration of Rights to be represented by counsel at the hearing, which was abrogated by the denial of her motion for continuance. Ms. Touzeau also argues that, in light of that fundamental right, and the fact that she was surprised by the adverse findings of the custody/visitation evaluation, of which she was informed only two weeks prior to the hearing to modify custody, "justice required" under Maryland Rule 2–508(a) that the trial judge grant her continuance to enable her to obtain pro bono counsel. Moreover, she maintains that she had made a concerted effort to obtain counsel, as evidenced by the affidavit she attempted to move into evidence at the hearing, and that the trial judge abused his discretion in refusing to consider her affidavit. Further, Ms. Touzeau asserts that because she was utilizing pro bono representation the trial judge should have been more lenient in his decision of whether to grant her continuance. She alleges that the record clearly demonstrates that she was unable to effectively represent herself and therefore counsel was needed to protect her custodial rights.

Conversely, Mr. Deffinbaugh posits that Ms. Touzeau has no constitutional right to counsel in a contested custody case and, therefore the trial judge was not required to grant her motion. Mr. Deffinbaugh also claims that, based upon Ms. Touzeau's level of education, experience in the court system, and the urgency of the matter to be addressed at the hearing, the trial judge did not abuse his discretion in denying Ms.

Touzeau's motion. Mr. Deffinbaugh argues that Ms. Touzeau's requested continuance completely ignores the prejudice that a delay would have caused to himself and Victoria, and that such prejudice required that the request for a continuance be denied. He asserts that, under Maryland Rule 2–508, the decision to grant a continuance lies within the sound discretion of the trial judge, who is uniquely situated to evaluate the facts and make an informed determination of whether justice requires the continuance, and the trial judge did not abuse his discretion in this case.

Maryland Rule 2–508 governs requests for continuances and states in pertinent part:

(a) **Generally.** On motion of any party or on its own initiative, the court may continue a trial or other proceeding as justice may require.[5]

---

**5.** The genesis of Rule 2–508(a) is Chapter 9, Sections 1, 4, and 9 of the Maryland Laws, which provided:

Whereas, by law no action can be continued in the general court beyond the end of the fourth court after the appearance court, except only in causes where evidences are wanted from beyond sea: And whereas by law no action can be continued in any county court beyond the end of the third court after the appearance court, unless on affidavit that testimony material is wanting: And whereas the said courts respectively ought to have a discretionary power to continue causes, under certain circumstances, as long as they may think absolutely necessary for the due and full administration of justice between parties.

Sec. 4. *And be it enacted,* That in any action of trespass or ejectment, if plots returned in any cause are defective, or if plots are not returned from the neglect of the surveyor, or if he is prevented by sickness, or other accident, from returning the same, and the said courts shall think a continuance of such cause necessary for the trial of the merits between the parties, they may continue such cause for such time as they shall judge necessary, not exceeding three courts after the usual time of continuance limited by law, and on such terms as they may think just and reasonable; and if plots are not returned from the neglect of any surveyor, the court may order him to pay the costs of the term, and they may impose on him such fine as the circumstances of his neglect may require.

Sec. 9. *And be it enacted,* That on a special verdict, or case stated, the said courts respectively shall not continue any cause on a *curiae advisare vult* longer than to the end of the third court after verdict taken, or case stated.

1787 Md. Laws, Chap. 9, Sections 1, 4, and 9. Nineteen years later, the General Assembly repealed Section 1 and replaced it with Chapter 41, Section 1, which stated:

> *Be it enacted, by the General Assembly of Maryland,* That no action commenced or to be commenced, shall continue longer than the end of the first court after the imparlance court, unless with consent of parties, at the discretion of the court, or for such cause as the law heretofore allowed for granting a continuance beyond the time limited herein appearing to the satisfaction of the court; *Provided,* that such actions as have been transferred from the general court to the county courts, by the act to provide for the organization and regulation of the courts of common law in this state, and for the administration of justice therein, shall continue in the same manner, for the same time, and under the same circumstances, as they might have continued in the general court.

1806 Md. Laws, Chap. 41, Section 1. In 1860, these three sections were again repealed and replaced by Maryland Code, Sections 34, 43 and 44 of Article 75, which provided:

> 34. No cause shall be continued beyond the second term after process has been served on the defendant, unless by consent of parties, or upon good cause shown by the party asking the continuance.

\* \* \*

> 43. On a special verdict, or case stated, the court shall not continue any case on a curia advisari vult longer than two terms.

> 44. If plots returned in any cause are defective, and cannot be amended at bar, or if plots are not returned from the neglect of the surveyor, his sickness, or other accident, and the court shall think a continuance necessary for a fair trial of the cause, the same may be continued for such reasonable time as the court may determine.

Maryland Code (1860), Article 75, Section 34, 43, and 44. These three sections were renumbered in 1904 as Maryland Code (1904), Sections 58, 67 and 68 of Article 75, in 1924 as Maryland Code (1924), Sections 62, 71 and 72 of Article 75, in 1939 as Maryland Code (1939), Sections 62, 71 and 72 of Article 75, and again in 1951 as Maryland Code (1951), Sections 62, 71 and 72 of Article 75 without any substantive changes.

On July 18, 1956, this Court adopted Maryland Rule 527(a), Order Adopting Rules of Practice and Procedure (July 18, 1956), *reprinted in* Md. Rules (1956), effective January 1, 1957, which combined the three sections and provided, in pertinent part:

> 1. In Court's Discretion.

> The court may upon motion of any party, or of its own motion, continue an action from time to time in order that a trial may be had upon the merits or as the interests of justice may require; but 2. Not beyond Second Term unless by Consent, for Cause, or by Rule. No action shall be continued beyond the second term after process has been served on the defendant, unless by consent of the parties, or upon good cause shown by the party asking the continuance, or when these Rules otherwise so provide.

Md. Rule 527(a) (1956). On April 6, 1984, this Court rescinded Rule 527(f) and replaced it with Rule 2–508, effective July 1, 1984. *See,*

We have not specified what the phrase "as justice may require" means, but have said that the decision to grant a continuance lies within the sound discretion of the trial judge. Absent an abuse of that discretion we historically have not disturbed the decision to deny a motion for continuance. *Greenstein v. Meister,* 279 Md. 275, 294, 368 A.2d 451, 462 (1977); *Dart Drug Corp. v. Hechinger Co.,* 272 Md. 15, 28, 320 A.2d 266, 273 (1974); *Butkus v. McClendon,* 259 Md. 170, 173, 269 A.2d 427, 428 (1970). We have defined abuse of discretion as "discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Jenkins v. City of College Park,* 379 Md. 142, 165, 840 A.2d 139, 153 (2003) (emphasis not included). *See also Garg v. Garg,* 393 Md. 225, 238, 900 A.2d 739, 746 (2006) (" 'The abuse of discretion standard requires a trial judge to use his or her discretion soundly and the record must reflect the exercise of that discretion. Abuse occurs when a trial judge exercises discretion in an arbitrary or capricious manner or when he or she acts beyond the letter or reason of the law.' ") *quoting Jenkins v. State,* 375 Md. 284, 295–96, 825 A.2d 1008, 1015 (2003); *In re Adoption/Guardianship No. 3598,* 347 Md. 295, 312, 701 A.2d 110, 118–19 (1997) ("There is an abuse of discretion 'where no reasonable person would take the view adopted by the trial court,' or when the court acts 'without reference to any guiding rules or principles.' An abuse of discretion may also be found where the ruling under consideration is 'clearly against the logic and effect of facts and inferences before the court,' or when the ruling is 'violative of fact and logic.' ") (citations omitted).

We have found that it would be an abuse of discretion for a trial judge to deny a continuance when the continuance was mandated by law, *see Mead v. Tydings,* 133 Md. 608, 612, 105 A. 863, 864 (1919), or when counsel was taken by surprise by an unforeseen event at trial, when he had acted diligently to prepare for trial, *Plank v. Summers,* 205 Md. 598, 604–05, 109

Order Adopting Rules of Practice and Procedure (April 6, 1984), *reprinted in* Md. Rules, Vol. 1, at 7–8 (2006).

A.2d 914, 916–17 (1954), or, in the face of an unforeseen event, counsel had acted with diligence to mitigate the effects of the surprise, *Thanos v. Mitchell,* 220 Md. 389, 392–93, 152 A.2d 833, 834–35 (1959).

We had the opportunity to address the circumstance in which a continuance was mandated by statute in *Mead v. Tydings, supra,* in which we stated that, while normally the decision regarding a continuance is reviewed under an abuse of discretion standard, when explicitly required by statute, the approval of a continuance was mandatory. *Id.* at 612, 105 A. at 864. In the present case, there was no statute or rule requiring that the trial judge grant Ms. Touzeau's motion for continuance.

We recognized that due diligence combined with surprise could justify a continuance in *Plank v. Summers, supra,* which was a case on remand to the Circuit Court for Prince George's County from this Court for the sole purpose of determining the value of hospital and medical services rendered to the plaintiffs. In *Plank,* the plaintiffs issued a subpoena duces tecum to the authorities at a naval hospital, requesting medical records and directing "that the records should be accompanied by 'someone who would be familiar with where these records were kept and that they were kept in the regular course of business'." *Id.* at 604, 109 A.2d at 916. The Navy, nevertheless, sent an individual unfamiliar with the records. When the plaintiffs sought to have their medical records admitted into evidence, the defendants objected to their admission on the grounds that a proper foundation had not been laid. The trial judge sustained the objection, and the plaintiffs subsequently requested, and were denied, a continuance. We reversed the trial judge's denial of the continuance, noting that the plaintiffs' counsel had exercised reasonable diligence in preparing for trial, that he clearly had been surprised by the Navy's failure to send the medical records with the appropriate officer, and that he could not have anticipated that the Navy would disregard the instructions in the subpoena duces tecum, and held that:

[I]n some exceptional situations, refusal to grant a continuance has been held to be reversible error. In the instant case we think the appellants were virtually denied their day in court under the mandate. The transcript of the former trial could not supply the evidence as to the precise nature and extent of the treatment. *To try the case without this basic evidence was like the play of Hamlet with Hamlet left out.* We think the ruling was prejudicial and amounted to an abuse of discretion under the circumstances.

*Id.* at 605, 109 A.2d at 917 (emphasis added) (citations omitted).

We also recognized another "exceptional situation" as a basis for a finding of abuse of his discretion when the judge denied a continuance in *Thanos v. Mitchell, supra.* In that case, plaintiff's counsel was informed on the Friday before the Monday trial date that his client was incapable of attending the trial due to mental illness. In response, plaintiff's counsel immediately notified both the opposing counsel and the trial judge of his client's illness, and when the trial was called on Monday, requested a continuance and presented two medical affidavits in support thereof. The trial judge denied the request. We reversed the trial judge's ruling and emphasized that the affidavits, which made it clear that the plaintiff was not capable of attending the proceeding, also indicated that the "[Plaintiff] would be available within a reasonable time (a different situation would be presented if her illness were permanent or the prognosis was for a lengthy disability)." *Id.* at 392, 152 A.2d at 835. Moreover, we noted that the plaintiff had not yet testified and that her testimony was material to the proceedings. *Id.* at 393, 152 A.2d at 835.

Subsequent to *Thanos,* we had occasion to iterate that a request for continuance must reflect that the basis for the delay will be obviated within a brief period of time. In *King v. Mayor of Rockville,* 249 Md. 243, 238 A.2d 898 (1968), Mrs. King requested a continuance six days before trial and in support thereof submitted a letter from her doctor stating that "the day before she had had 'an acute episode of atrial fibrillation and aggravation of her Heart Failure' and that she

could not appear in court 'until further convalescence.' " *Id.* at 246, 238 A.2d at 900. Observing that "[i]t appears to the Court that the elderly defendant may never be well enough to attend Court," the trial judge denied Mrs. King's motion for continuance. *Id.* We affirmed the trial judge's ruling, emphasizing that availability within a reasonable, rather than a protracted, period of time is an important consideration in a continuance decision. *Id.* In the present case, neither Ms. Touzeau, nor her proffered affidavit,[6] proposed when her pro bono counsel would be available. In fact, consistent with the Administrative Order for Continuances, *supra,* counsel should not have expected a continuance, but rather should have made every effort to secure the presence of a partner or associate from his large firm to act in one of his conflicting cases in his stead.

We also have declined to overrule the trial judge's denial of a motion for continuance where the moving party has failed to demonstrate due diligence to mitigate the effects of what was alleged to be a surprise. In *Hughes v. Averza,* 223 Md. 12, 161 A.2d 671 (1960), Barbara Hughes and two of her siblings filed a notice of caveat to their father's will alleging, among other things, fraud and forgery. During the trial, the caveators requested a continuance in order to engage a handwriting expert, and the trial judge denied their request, which we affirmed. We noted that the caveators were well aware of their need to retain a handwriting expert in advance of the hearing, and thus, "[t]here was no element of surprise and if [the caveators] needed an expert, they should have employed him before trial." *Id.* at 18, 161 A.2d at 675. We concluded that "[u]nder such circumstances there is no doubt that the failure of trial counsel to adequately prepare for trial was not

---

6. Ms. Touzeau also argues that the judge abused his discretion in not considering the affidavit itself, when in fact, the affidavit does not add anything to what Ms. Touzeau orally presented at the hearing to modify custody, except to the extent that it is specific that Ms. Touzeau only spoke to proffered counsel on February 3, 2005, five days before the custody hearing.

a ground for a continuance or postponement." *Id.* at 19, 161 A.2d at 675.

In another case where we affirmed the denial of a motion for continuance, *Butkus v. McClendon, supra,* Mrs. Butkus had requested a continuance seven days before the date set for trial in order to depose a witness, claiming that the witness did not agree to testify on Mrs. Butkus's behalf until thirty days before the trial date and that Mrs. Butkus was not able to locate a reporter to conduct the deposition. The trial judge denied the motion. We differentiated the *Plank* and *Thanos* situations from that of Mrs. Butkus, explicating that "[t]he difference between those cases and the one before us is significant, especially as to the double-barreled elements of surprise and diligence." *Id.* at 174, 269 A.2d at 429. We emphasized the lack of diligence on Mrs. Butkus's counsel's part in attempting to secure the witness's deposition, stating:

[E]ven if we overlook the seven preceding years, the plaintiffs' lawyer knew of [the witness's] availability at least thirty days before trial, a remarkable glimmer of hope that should have dictated immediate action. However, they failed to utilize the quickest means available to secure her testimony. With the exception of their initial contact, the appellants' attorneys communicated with each other by mail rather than telephone. When they slowly came to the realization that the court reporter there could not do the job, they still had seven days in which to make other arrangements; instead they elected to wait for the court's ruling on their motion for continuance. But even when this was denied on February 14 they had at least three full days before trial in which to act. The lawyer was not confronted with the temporary and uncorrectable illness of his own client but just the inability of one court reporter to dispose of a brief deposition. Yet there was no attempt to contact another reporter in Washington, Baltimore or Philadelphia who could accompany him on a one day excursion to Pennsylvania and have a deposition ready for trial.

*Id.* at 175, 269 A.2d at 429. We concluded that "there was no element of surprise here and that there was no reason why

[Ms. Butkus] could not have maintained frequent contact with [the witness] concerning her willingness to testify." *Id.* at 174, 269 A.2d at 429. *See also Fontana v. Walker,* 249 Md. 459, 464, 240 A.2d 268, 271–72 (1968) (holding no abuse of discretion where trial judge failed to grant a continuance sua sponte where there was no element of surprise); *Martin v. Rossignol,* 226 Md. 363, 366–67, 174 A.2d 149, 150–51 (1961), (holding no abuse of discretion in denying motion for a continuance and subsequent motion for new trial where there was no element of "mistake or surprise"), *overruled on other grounds, Buck v. Cam's Broadloom Rugs, Inc.,* 328 Md. 51, 612 A.2d 1294 (1992).

Our reticence to find an abuse of discretion in the denial of a motion for continuance has not been ameliorated, nor have we found it to be an "exceptional situation," when the denial has had the effect of leaving the moving party without the benefit of counsel. In *Cruis Along Boats, Inc. v. Langley,* 255 Md. 139, 257 A.2d 184 (1969), the defendant requested a continuance the day before trial because one of his counsel, Mr. Blatt, was scheduled to be in court in another matter on the trial date. The trial judge refused to grant a continuance and, on appeal, the defendant argued that the denial of his motion constituted a denial of his constitutional right to have effective assistance of counsel because Mr. Blatt was his primary counsel in the matter. *Id.* at 142, 257 A.2d at 186. We held that there was no abuse of discretion in the trial court's ruling because defendant had at least four days' notice that Mr. Blatt would not be available, and therefore the defendant "should have made other arrangements, perhaps adopting the suggestion of the trial judge that an associate of Mr. Blatt's ... firm handle the trial." *Id.* at 142–43, 257 A.2d at 186. *See also Travelers Indem. Co. v. Nationwide Const. Corp.,* 244 Md. 401, 407, 224 A.2d 285, 288 (1966) (affirming the trial judge's denial of the defendants' motion for continuance made the morning of the day set for trial on the ground that counsel had a scheduling conflict with another proceeding, and the denial resulted in the defendants' lack of representation at trial); *Clarke Baridon, Inc. v. Union Asbestos & Rubber Co.,* 218

Md. 480, 482–83, 147 A.2d 221, 222 (1958) (affirming entry of summary judgment by default against defendant where defendant's attorney requested a continuance in absentia on the date set for hearing because of a scheduling conflict with another case).

Ms. Touzeau distinguishes the case before us from these latter cases and posits that her circumstances warrant a reversal of the denial of her motion for continuance because she was surprised by the results of the evaluation and because she acted with due diligence in securing pro bono counsel, thus bringing her motion within the holdings of *Plank* and *Thanos.* We disagree. The present case is differentiated primarily because it was expedited as a consequence of the immediate impact that Victoria's relocation had on her relationship with Mr. Deffinbaugh. Ms. Touzeau's counsel acknowledged at oral argument before this Court that the continuance requested was not merely for one day, but for a protracted period of time to enable him to become familiar with the case and to prepare for the hearing. Such a delay would have completely obviated the expedited nature of the proceedings.

Further, unlike the plaintiffs in *Plank* and *Thanos,* this case lacks the elements of surprise and due diligence. The parties had been notified in September that within four months a custody evaluation would be undertaken and completed and that a hearing would be held, unless a settlement could be achieved. Although Ms. Touzeau's asserts that she was ambushed by the unfavorable custody/visitation evaluation results, contested custody proceedings are adversarial proceedings and therefore unfavorable results cannot be deemed "surprising" per se. Moreover, Ms. Touzeau clearly was cognizant of the significance of the custody/visitation evaluation, the results of which she was advised to anticipate during the September scheduling conference. She had prior experience with unfavorable custody/visitation evaluation results; the 2001 custody/visitation evaluation, which the trial judge partially relied upon in this proceeding, also was not favorable to her. Despite this experience, the record shows a lack of diligence on Ms. Touzeau's part to secure counsel for the

February hearing to modify custody; she stated on the record at the February hearing that she had made no attempt to obtain counsel until after the settlement conference on January 21, only two weeks before the custody hearing and some four months after Mr. Deffinbaugh filed his emergency motion for modification of custody and attorney's fees, even though she was advised in September to anticipate receiving the report on January 21, 2005.

■  Nevertheless, Ms. Touzeau asserts that, even if she is deemed not to have presented those "exceptional situations" in which we found an abuse of discretion in the denial of a continuance, she had a right to be represented by counsel because the proceedings implicated the right to parent, a right that we recognized to be fundamental. *See In re Adoption/Guardianship Nos. J9610436 and J9711031*, 368 Md. 666, 669–70, 796 A.2d 778, 780 (2002). We have said that the right to parent is fundamental even in custody disputes. *See McDermott v. Dougherty*, 385 Md. 320, 353, 869 A.2d 751, 770 (2005). The fundamental nature of the right to parent, however, does not necessarily implicate the range of due process protections statutorily afforded to parents in Child In Need of Assistance ("CINA") proceedings and involuntary termination of parental rights proceedings. *See* Maryland Code (1974, Repl.Vol.2002), Section 3–813 of the Courts and Judicial Proceedings Article (affording indigent parents counsel in Child In Need of Assistance proceedings); Maryland Code (1999, 2004 Repl.Vol.), Section 5–323 of the Family Law Article (affording indigent parents counsel in involuntary termination of parental rights proceedings). Even in the two latter situations, we heretofore have declined to require the full panoply of constitutional due process protections to litigants, as afforded to defendants in criminal cases. *See In re Blessen H.*, 392 Md. 684, 705–08, 898 A.2d 980, 993–95 (2006) (holding that a personal dialogue with a parent was not required prior to her waiver of a contested CINA adjudicatory hearing because she was not entitled to the same constitutional due process protections afforded a party facing confinement).

■ Apparently, however, Ms. Touzeau also is asking that we afford parties seeking pro bono representation a higher standard of scrutiny in our review of a denial of motion for continuance. She contends that the standard would be consistent with this Court's adoption of Rule 6.1(a) of the Maryland Rules of Professional Conduct, which states that "[a] lawyer has a professional responsibility to render pro bono publico legal service," and Maryland Rule 16–903, which requires that all attorneys practicing law in Maryland annually file a Pro Bono Legal Service Report. These rules, however, do not embody distinctions between retained and pro bono attorneys; the fact that Ms. Touzeau was seeking a continuance in order to utilize pro bono counsel does not distinguish her situation from those cases in which we have affirmed the denial of continuances when retained counsel was unavailable, such as *Fontana v. Walker*, 249 Md. 459, 463, 240 A.2d 268, 271 (1968). In that case, the Fontanas' counsel withdrew from the case the day before the hearing. Acknowledging that the Fontanas' interests would have been better protected had they been represented by counsel at the hearing, we noted that "the unfortunate position in which the [Fontanas] find themselves is partially attributable to their inability or unwillingness to retain counsel at the hearing in the court below." *Id.* at 463, 240 A.2d at 271. We affirmed the trial judge's denial of the continuance, emphasizing that:

> The granting or denial of a continuance or postponement is within the sound discretion of the trial court. This rule applies even where the ground for the requested continuance is withdrawal of movant's counsel from the proceedings.

*Id.* (citations omitted). The only distinction between *Fontana* and the case at hand is the fact that in *Fontana* the moving party was unrepresented because of the withdrawal of retained counsel, while in the present case Ms. Touzeau was unrepresented because of the temporal unavailability of pro bono counsel. Were we to adopt Mrs. Touzeau's duality, we would be elevating the rights of litigants who utilize pro bono counsel over the rights of litigants who retain counsel, thereby

creating two distinct classes of litigants in our courts. We decline to do so.

In the case *sub judice,* Ms. Touzeau has failed to demonstrate that she experienced an unforeseen circumstance in the contested custody proceedings that she reasonably could not have anticipated and that she acted with due diligence to mitigate the consequences of not being represented by counsel at the hearing to modify custody. Accordingly, we hold that the trial judge did not abuse his discretion in denying Ms. Touzeau's motion for continuance and affirm the judgment of the Court of Special Appeals.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED WITH COSTS.*

Dissenting Opinion by BELL, C.J., which CATHELL, and GREENE, JJ., join.

The issue in the case *sub judice* is whether the trial judge abused his discretion when he denied the appellant Tara M. Touzeau's motion for continuance of a custody modification hearing in order to secure pro bono counsel. The majority concludes that the trial judge did not abuse his discretion in denying Ms. Touzeau's motion; however, I believe that the trial judge erred, and thus abused his discretion, as did the Court of Special Appeals, by not considering pro bono counsel's affidavit, and, further, by not taking into account the totality of Ms. Touzeau's situation, a situation in which there existed the danger of a substantial, fundamental right being lost—Ms. Touzeau's custodial rights of her daughter, Victoria.

A.

Maryland Rule 2–508 provides in pertinent part:

"(a) **Generally.** On motion of any party or on its own initiative, the court may continue a trial or other proceeding *as justice may require.*" (Emphasis added).

To be sure, this Court has held that the determination as to whether a continuance should be granted lies within the

discretion of the trial judge, and, absent an abuse of that discretion, the decision should not be disturbed. *See, e.g., Greenstein v. Meister,* 279 Md. 275, 294, 368 A.2d 451, 462 (1977); *Butkus v. McClendon,* 259 Md. 170, 173, 269 A.2d 427, 428 (1970). The trial judge, thus, plays a very important role in our judicial system, as he or she has the opportunity to view the proceedings first hand and the responsibility of overseeing them. It is for this reason, as the majority points out correctly, the trial judge is given great deference with regard to the many discretionary matters that may arise at the trial level. *Touzeau v. Deffinbaugh,* 394 Md. 654, 669, 907 A.2d 807, 816 (2006). It is never this Court's intention to usurp the role of the trial judge as such a usurpation would serve the purpose of undermining the trial judge's authority, and, in turn, his or her effectiveness. This Court does, however, have the authority, indeed, the obligation, to review, on appeal, the exercise of discretion by the trial court to determine whether, in that exercise, it acted arbitrarily or prejudicially.

On the date of the subject hearing, Ms. Touzeau presented the trial court with an affidavit from her attorney, Mr. Cullen. Mr. Cullen had agreed to represent Ms. Touzeau, pro bono, in the custody modification hearing concerning her daughter; however, due to a scheduling conflict, Mr. Cullen was not able to appear on that date. When Ms. Touzeau indicated to the trial judge that she had an affidavit from Mr. Cullen, the trial judge refused to even look at the affidavit stating, "I don't need that." The majority accepts the trial judge's complete altogether disregard of the affidavit stating that "the affidavit [did] not add anything to what Ms. Touzeau orally presented at the hearing to modify custody." *Id.* at 672 n. 6, 907 A.2d at 817 n. 6. The majority, further, relying on this Court's ruling in *King v. Mayor and Council of Rockville,* 249 Md. 243, 246, 238 A.2d 898, 900 (1968) (finding that the trial court did not err in denying a request for continuance because such a request must reflect that the basis for the delay will be obviated within a brief period of time), maintains that "neither Ms. Touzeau, nor her proffered affidavit, proposed when her

pro bono counsel would be available." *Id.* at 672, 907 A.2d at 817–18.

In addition to being significantly flawed, the majority's rationale for excusing the court's refusal to consider counsel's affidavit is, to me, even more unsettling. The best that can be said for the rationale is that it is informed, perhaps, by hindsight, and, from that perspective, the affidavit may be dismissed as having no independent significance. It must be said that when presented, the trial judge did not know, nor could he have known without looking at it, what was being offered in the affidavit. The question that concerns the majority so greatly, when Mr. Cullen would have been available for the hearing, *id.*, very well could have been answered in the affidavit itself, but the trial judge would never have known since he refused to even accept, much less to consider, it. In addition, the trial judge could have easily ascertained, by inquiry, when pro bono counsel would have been available. He could have asked Ms. Touzeau if she had discussed with counsel when counsel would be available, or he could have telephoned counsel to determine when, not if, since counsel had agreed already to represent Ms. Touzeau, counsel would have been available for trial.

The failure to even look at the affidavit was, I submit, a total abdication of the trial judge's responsibility, not only to the parties in this matter, but to the overall system of justice in which he serves such an important, critical role. Thus, rather than simply abuse his discretion, I believe the trial judge, in effect, refused, but certainly failed, to exercise any discretion. I can not understand how there ever can be a proper exercise of discretion when a threshold piece of information is rejected, before it is even seen, not to mention considered. It must also be stressed that Mr. Cullen did not simply communicate his commitment in a letter, he chose to do so by affidavit.

If, as the majority holds, *id.* at 677, 907 A.2d at 821, the trial judge exercised discretion, it was abused. The matter before the trial court certainly was important enough to require that

information bearing on the question of whether "justice may be served" by the continuance be considered seriously, rather than simply ignored.

The majority, in arriving at its holding, also accepts the trial court's analysis that Ms. Touzeau waited until the last minute to look for counsel, and, thus, that she did not "[act] with due diligence to mitigate the consequences of not being represented by counsel at the hearing to modify custody." *Id.* I do not agree. Ms. Touzeau found herself in a situation in which, unfortunately, too many litigants in our court system find themselves today. What happened to her was not the result of an unwillingness on her part to secure counsel, but, instead, was the result of her financial situation. Ms. Touzeau made it very clear at trial that she could not afford an attorney and that she tried to secure counsel even before being presented with the results of the Report of Custody/Visitation Evaluation on January 21, 2005. Ms. Touzeau tried to secure representation from the Legal Aid Bureau as well as the Pro Bono Resource Center. Her attempts did not yield favorable results. This, to me, is not at all surprising since many of the agencies offering this type of aid to litigants are generally overworked and understaffed. The Legal Aid Bureau would only consider representing Ms. Touzeau if she were granted a continuance. This response to Ms. Touzeau was more than likely the result of the Legal Aid Bureau trying to save time and resources; however, its inability to represent Ms. Touzeau at the modification hearing was a great detriment to her and left her without legal representation.

Ms. Touzeau was not simply looking to retain an attorney; she was looking for pro bono representation, which, as the record indicates, is not always easy to find. Ms. Touzeau was fortunate enough to find pro bono representation, albeit only five days before the scheduled modification hearing. It is my opinion that, like the trial court, the majority is too preoccupied with the timing of Ms. Touzeau's retention of counsel and not nearly concerned enough about the adverse consequences that potentially awaited her were she not to have counsel.

The majority asserts that Ms. Touzeau was not entitled to a continuance merely because her attorney had a scheduling conflict. The majority cites to the "Revised Administrative Order For Continuances For Conflicting Case Assignments or Legislative Duties" ("Administrative Order") as support of its affirmance of the trial court.[1] Although the majority correctly cites to the Administrative Order, I would assert that the rules themselves are not to be applied so rigidly as to negate a consideration of the equities and the context of the case. I believe, moreover, that the trial court's hard and fast, perhaps more appropriately, mechanical, application of the Administrative Order is counterproductive to, and indeed, is inconsistent with, courts' purported goal of assurance of fairness, a goal with which this Court certainly and ultimately should be concerned.

The majority also seems to agree with the trial court's use of expedition as the main reason for denying Ms. Touzeau's motion for a continuance. The majority opined that "[t]he present case is differentiated primarily because it was expedited as a consequence of the immediate impact that Victoria's relocation had on her relationship with Mr. Deffinbaugh ..." *Id.* at 675, 907 A.2d at 819. The trial court, however, *in an effort to settle the matter quickly, did not make the proper decision.* Although the trial court was correct in taking into account the urgency of the situation, it is my opinion that this urgency supported a different conclusion. The gravity of the

---

1. The pertinent part of the Administrative Order upon which the Court of Special Appeals relied in finding that the trial judge did not err in denying Ms. Touzeau's motion is:

2. *RESPONSIBILITIES OF COUNSEL*
   * * *
   b. If counsel accepts employment in a case in which a date or time for argument, hearing, or trial has already been set after counsel has been notified of a conflicting assignment for the same date or time, counsel should not expect to be granted a continuance.
   * * *

   Although the Administrative Order does not distinguish between pro bono counsel and retained counsel, I think that that is something that the majority, as well as the trial court, should have considered. See my discussion of the differences of counsel, *infra* at p. 684, 907 A.2d at pp. 824–825.

situation did not warrant a speedy trial as much as it did a fair and thorough one.

As Judge Hollander so poignantly put it, in dissent, "[t]he court's calendar was not more important than the parties' fundamental parental rights or the child's best interest." She continues, '[t]he child's best interest, which is at the heart of this case, is served best when the parents are on equal footing, so that the custody fight is fought fairly and the court has before it all relevant information. That is not likely to happen when one parent is unrepresented." I agree with Judge Hollander. Like her, I believe the trial court should have weighed the importance of the issue—the right to be lost—against the amount of time to be lost by granting a postponement. That this was the first request for a postponement, and by no means at all an unreasonable one, should have received considerable weight.

I do not disagree with the majority's argument that Ms. Touzeau may not have been surprised, or, as the majority puts it, that she "failed to demonstrate that she experienced an unforeseen circumstance ... that she reasonably could not have anticipated." *Id.* at 678, 907 A.2d at 821. I also do not find that observation to be particularly pertinent, and certainly not dispositive. It is true that Ms. Touzeau should have, at the least, because of the nature of the proceedings themselves, anticipated an adverse report by the court-appointed evaluator. To acknowledge that this is so is not to say that her efforts to obtain counsel were unreasonable. I do not ascribe the responsibility for her counsel situation to Ms. Touzeau's dilatoriness or failure to appreciate the possibility that an adverse recommendation could be the result of custody/modification analysis the court ordered. In short, I do not agree with the majority's contention that merely because "[s]he had prior experience with unfavorable custody/visitation evaluation results," *id.* at 675, 907 A.2d at 820, that she "*clearly* was cognizant of the significance of the custody/visitation evaluation," *id.* and, thus, of her need for counsel. I believe that Ms. Touzeau was diligent in her search for counsel and that she acted appropriately, given her circumstances. The trial court,

again, should have looked at the totality of her situation before denying her motion for a continuance. And this Court should permit no less.

It is my contention that a grave disservice was done in allowing Ms. Touzeau to represent herself, particularly since she was neither prepared, nor equipped, to do so. The trial court seems, as does the majority, to have given weight to the appellee's argument that Ms. Touzeau had enough education and pro se "expertise" in the legal field to allow her to represent herself. To the extent that this is true, such reasoning is significantly flawed. To be sure, this Court sets the requirements for admission to the Bar. At minimum a law degree is required. We have never, nor should we, equated a college degree and some pro se experience to an adequate level of experience needed to defend oneself in a matter before this Court, never mind a trial court, much less a matter of such significance and complexity as in the case *sub judice*. It was clearly a stretch, particularly when Mr. Deffinbaugh was represented by able and experienced counsel, and, as the record indicates, Ms. Touzeau could not effectively examine or cross-examine her witnesses, properly introduce evidence, and make all pertinent arguments.

### B.

The majority's unwillingness to consider and take into account the seriousness of Ms. Touzeau's circumstances is, I repeat, disturbing to me. It also highlights another point, whose importance is understated and underappreciated. It has its roots in public policy. Ms. Touzeau made the effort to secure pro bono counsel, and she was successful. We have been, as a Court, concerned with increasing representation available for indigent litigants, and we have made substantial efforts to increase the level and amount of pro bono representation the legal profession provides.[2] Our efforts culminated,

---

2. Maryland has a strong policy of encouraging attorneys to provide pro bono representation to indigent litigants, as a public service and as a professional responsibility. The Preamble to our Rules of Professional

years ago, in the adoption of a rule pertaining to pro bono service, providing a goal toward which attorneys should work. *See* Md. Rule Prof. Conduct 6.1.[3] More recently, we have

Responsibility, *see* Maryland Rule 16–812, recognizes a lawyer's responsibilities in this regard. It provides, in pertinent part:

"A lawyer should be mindful of deficiencies in the administration of justice and of the fact that the poor, and sometimes persons who are not poor, cannot afford adequate legal assistance. Therefore, all lawyers should devote professional time and resources and use civic influence to ensure equal access to our system of justice for all those who because of economic or social barriers cannot afford or secure adequate legal counsel. A lawyer should aid the legal profession in pursuing these objectives and should help the bar regulate itself in the public interest."

**3.** Rule 6.1 was initially adopted April 15, 1986, effective Jan. 1, 1987. As adopted, it provided:

"A lawyer should render public interest legal service. A lawyer may discharge this responsibility by providing professional services at no fee or a reduced fee to persons of limited means or to public service or charitable groups or organizations, by service in activities for improving the law, the legal system or the legal profession, or by financial support for organizations that provide legal services to persons of limited means."

It was amended April 9, 2002, effective July 1, 2002. That amendment did not change the aspirational goal; instead, it added the minimum number of hours that every full- or part-time lawyer should aspire to complete and that the failure to complete the hours is not grounds for disciplinary action. Neither did the latest amendment substantively change the Rule's goal. In its current iteration, Rule 6.1 provides:

"(a) *Professional Responsibility.* A lawyer has a professional responsibility to render pro bono publico legal service.

"(b) *Discharge of Professional Responsibility.* A lawyer in the full-time practice of law should aspire to render at least 50 hours per year of pro bono publico legal service, and a lawyer in part-time practice should aspire to render at least a pro rata number of hours.

"(1) Unless a lawyer is prohibited by law from rendering the legal services described below, a substantial portion of the applicable hours should be devoted to rendering legal service, without fee or expectation of fee, or at a substantially reduced fee, to:

"(A) people of limited means;

"(B) charitable, religious, civic, community, governmental, or educational organizations in matters designed primarily to address the needs of people of limited means;

"(C) individuals, groups, or organizations seeking to secure or protect civil rights, civil liberties, or public rights; or

"(D) charitable, religious, civic, community, governmental, or educational organizations in matters in furtherance of their organizational purposes when the payment of the standard legal fees would

amended our rules to provide for mandatory reporting and set up an infrastructure to keep track of the hours provided and to encourage and facilitate greater pro bono participation and hours. *See* Md. Rules 16–901 to –903. Given all of our efforts and our continued attempts to secure more pro bono representation for those who cannot afford to retain their own attorney, we ought to be sensitive to, and encouraging of, those who join our effort or take the goal seriously. We should, more important, be concerned with the message being sent to both attorneys who are willing to provide such a service (like Mr. Cullen in the case *sub judice* ) and to our citizens who are unable to pay for representation. When we rigidly and mechanically apply the rules, rather than encouraging the rendering of pro bono services, we discourage it. We have done more than simply ask lawyers to volunteer and then give us the approximate number of hours spent on pro bono service; we have required them to report to us and have given them target hours to achieve. Indeed, we have, in Rule 6.1, emphasized the importance of representational legal services. *See* Rule 6.1(b)(1). If our thrust with regard to pro bono service is to mean anything, especially representational services, we cannot in any way discourage attorneys from offering such aid to those who so desperately need it, nor would we want to send the message to those who work hard to secure such representation that their efforts are in vain. That is what we do with respect to lawyer and litigant under the circumstances *sub judice.* It would be unreasonable for us to expect that Mr. Cullen would have put Ms. Touzeau's interest in front of those of one of his "paying" clients. The fact that he was

---

significantly deplete the organization's economic resources or would otherwise be inappropriate.

"(2) The remainder of the applicable hours may be devoted to activities for improving the law, the legal system, or the legal profession.

"(3) A lawyer also may discharge the professional responsibility set forth in this Rule by contributing financial support to organizations that provide legal services to persons of limited means.

"(c) *Effect of Noncompliance.* This Rule is aspirational, not mandatory. Noncompliance with this Rule shall not be grounds for disciplinary action or other sanctions."

willing to help Ms. Touzeau should have been given some level of attention. At the least, his affidavit should have been accepted and considered seriously by the court.

The majority maintains that "[w]ere we to adopt Mrs. [sic] Touzeau's duality, we would be elevating the rights of litigants who utilize pro bono counsel over the rights of litigants who retain counsel, thereby creating two distinct classes of litigants in our courts." *Id.* at 677–78, 907 A.2d at 821. I am not persuaded. Instead, I contend that the kind of representation rendered is a factor, even if not, in all cases, a dispositive factor, that should be taken into account when the court, in considering the totality of the circumstances, decides whether a continuance is warranted. That factor takes on greater significance, I submit, when a poor litigant has secured counsel, but, unfortunately, pro bono counsel's schedule is not exactly compatible with the trial court's trial or hearing schedule. The standard would not be heightened in any way and would still be the same in that "justice would require" additional time in such a circumstance. By taking into account the kind of representation being rendered, this Court would not frustrate or undermine its pro bono service efforts and, at the same time, further and encourage a goal that has always been, and continues to be, of paramount importance—access to justice for all.

## C.

In addition to the implications that the ruling in this case may have pertaining to pro bono representation, there is another issue that I feel cannot be overlooked. In denying Ms. Touzeau a continuance, the trial court, in effect, denied her representation of counsel. Her motion was heard at the commencement of the modification hearing, thus an adverse ruling left her with no choice but to represent herself. It is important that the majority, as well as the trial courts, understand the consequences of their decisions. We would not be faced with the case *sub judice* if *Civil Gideon,* a right to representation in certain civil cases implicating fundamental rights—basic human needs, was a reality in our legal system.

Ms. Touzeau would have been entitled to counsel as a matter of right and would not have had to scrounge to find pro bono representation. Unless the notion of *Civil Gideon* is adopted, Ms. Touzeau's situation is one that this Court will see again and again. As Judge Cathell so succinctly declared in his concurrence in *Frase v. Barnhart*, 379 Md. 100, 140, 840 A.2d 114, 138 (2003), "this issue will not go away."

There is a lot to be said for Judge Cathell's concurrence in *Frase.* His candor was very refreshing and reflected the importance of the issue from a societal perspective and the zeal with which it is espoused by its advocates. He was correct in his assertion that "[t]he answers being sought in this Court, whatever the answers may be, cannot be found anywhere else . . . we should no longer leave them, and this issue, in limbo." *Id.* at 134, 840 A.2d at 134. What happened to Ms. Touzeau in this case is a travesty and sad commentary on an aspect of our legal system. Would that there were these safeguards in place, she, and her rights, would have been better protected.

The discussion surrounding the notion of *Civil Gideon* is one that is gaining more and more momentum. There are many who believe that indigents need protection when fundamental rights, other than those involving incarceration, are being threatened. Recently the ABA has made the following recommendation:

> "[T]he American Bar Association urges federal, state, and territorial governments to provide legal counsel as a matter of right at public expense to low income persons in those categories of adversarial proceedings where basic human needs are at stake, such as those involving shelter, sustenance, safety, health or child custody as determined by each jurisdiction." [4]

---

4. This recommendation is found in the ABA House of Delegates Report that was adopted on August 7, 2006. The unanimously approved document is part of the ABA's effort to ensure equal justice for all in the United States, an effort that has a long history dating back to the 1920's. In its amicus brief, at pages 3–4, in *Lassiter v. Dept. of Social*

The ABA defines child custody as "embrac[ing] proceedings where the custody of a child is determined or the termination of parental rights is threatened."

The ABA could not be more correct in its position, and as a member of the task force that made the above recommendation, I fully support its sentiment. Ms. Touzeau is entitled to counsel, and she should have been allowed a continuance so as to be able to benefit from counsel's services. Parenting is at the heart of our culture and is a right that must be protected at all costs. As the record indicates, Ms. Touzeau was unable to perform the pertinent tasks required in order to defend herself adequately against the competent counsel of Mr. Deffinbaugh and because of this lost custody of her daughter. Ms. Touzeau has had custody of her daughter from birth. She deserved to be able to fight for her daughter on equal footing with Mr. Deffinbaugh, and, by denying her continuance request, the trial court denied her that right. Ms. Touzeau's circumstance clearly underscores the need for legal assistance in the civil arena as a matter of right.

Judge CATHELL and Judge GREENE have authorized me to state that they join in this dissenting opinion.

---

*Services of Durham County,* 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), the ABA demonstrated its support of the notion of *Civil Gideon* by stating that "in order to minimize [the risk of error] and to ensure a fair hearing, procedural due process demands that counsel be made available to parents, and that if the parents are indigent, it be at public expense." The ABA further noted that "skilled counsel is needed to execute the basic advocacy functions: to delineate the issues, investigate and conduct discovery, present factual contentions in an orderly manner, cross-examine witnesses, make objections and preserve a record for appeal ... pro se litigants cannot adequately perform any of these tasks."